## J. H. JACKSON v. L. WALDSTEIN ET AL.

### No. 1162.

1. **Case Adhered to—Innocent Purchaser of Land Certificate.**—New York and Texas Land Co. v. Hyland, 8 Texas Civil Appeals, 601, adhered to. A purchaser of a land certificate before location is subjected to the same rules that apply to the purchase of other personal property. It is not the subject of an innocent purchase, unless some element of estoppel may be connected with its acquisition.

2. **Case Adhered to—Pre-existing Debt Not a Valuable Consideration to Support Plea of Innocent Purchaser.**—First National Bank of Austin v. Mortgage Co., 6 Texas Civil Appeals, 61, adhered to. A mortgagee stands in the same attitude as a purchaser in relation to the plea of innocent purchaser; and he can not support such plea when his mortgage is based upon a pre-existing debt.

3. **Bona Fide Purchase.**—The same rules as to consideration apply to personal as to realty when the question of innocent purchase is involved; comparing articles 4232 and 3190b, Revised Statutes, with each other.

4. **Burden of Proof.**—It devolves upon the party making the claim of innocent purchaser to prove the payment of the consideration.

APPEAL from Travis.    Tried below before Hon. JAS. H. ROBERTSON.

*Fred. Carlton*, for appellant.—The failure and neglect of plaintiffs' ancestor, J. J. Waldstein, and the plaintiffs after his death, to locate the land certificates by virtue of which the land in controversy was located, or to respond to advertisements by their former owner, M. D. Bullion, as to their loss until they would have been barred by limitation; the purchase by W. F. Cummings from Bullion during this long silence of Waldstein, for value, partly in cash and partly in labor in locating land certificates; the acceptance by defendant Jackson from said Cummings, of a deed of trust dated June 2, 1876, to secure on a number of tracts of land, including the two land certificates by virtue of which the lands in controversy in this suit were located, a valid debt; the release of said deed of trust and note by the acceptance of a deed from said Cummings, dated July 18, 1879, for the two tracts in controversy in this suit, long after the same had been located, without Waldstein's deed being of record, and without any actual notice of Waldstein's deed until after Jackson had bought same, and until Jackson's original debt would have been barred by limitation, render Jackson's equity superior to the equity of the Waldstein heirs, and as neither has the legal title, the superior equity should prevail, notwithstanding the priority in time of the Waldstein equity.    Frost v. Wolf, 77 Texas, 463; Johnson v. Newman, 43 Texas, 628; Keen v. Casey, 22 Texas, 412; Const., art. 14, sec. 2.

Counsel also cited McKean v. Sultenfuss, 61 Texas, 325; Wallace v. Campbell, 54 Texas, 87; McKamey v. Thorp, 61 Texas, 652.

*R. C. Walker*, for appellees.—1.  A land certificate is personal property, and a subsequent purchaser from the same vendor can not be protected as an innocent purchaser against those who may own the

legal title to the certificate, unless in cases of estoppel. Dodge v. Littler, 73 Texas, 319; Stone v. Brown, 54 Texas, 330; Dodge v. Arnold, 28 Texas, 100; Newmark on Sales, sec. 170.

2. In order for a subsequent purchaser from the same grantor to be protected as an innocent purchaser, he must show affirmatively that he paid a valuable consideration without notice, either actual or constructive. Watkins v. Edwards, 23 Texas, 447; Story's Eq. Jur., 1502; Mitford & Tyler's Pl. and Pr. in Eq., pp. 362, 363.

3. When there are equal equities, the first in order of time will prevail. 6 Am. and Eng. Encyc. of Law, p. 709; 1 Pom. Eq., secs. 413–415; 2 Id., secs. 678–683.

4. One who purchases at a voluntary sale from his debtor, and pays no money, but credits the amount of the consideration on a pre-existing debt, is not a bona fide purchaser for value. Stiffian v. Bank, 69 Texas, 517; Bailey v. Tindall, 59 Texas, 540; Spurlock v. Sullivan, 36 Texas, 511; Bonner v. Grigsby, 84 Texas, 330; Overstreet v. Manning, 67 Texas, 657; Golson v. Felder, 2 Texas Civ. App., 400.

FISHER, CHIEF JUSTICE.—This was an action of trespass to try title, brought by the appellees, L. Waldstein, Henry Waldstein, Mrs. Theresa E. Shilling and husband, Samuel Shilling, Mrs. Amanda W. Moore and husband, G. B. Moore, of Jefferson County, Arkansas; Mrs. Nettie W. Kerstine and husband, Julius Kerstine, of Garland County, Arkansas, against J. L. Hume, James P. Crane, B. L. Frost, and J. H. Jackson, on the 14th of November, 1891, to recover six certain tracts of land, which are described as follows: 1. 640 acres tract situated in Cottle County, Texas, located by virtue of duplicate land certificate number 30–196. 2. 640 acres tract situated in Cottle County, located by duplicate land certificate number 30–200. 3. 492½ acres tract situated in Archer County, by virtue of duplicate land certificate number 30–201. 4. 640 acres tract situated in Roberts County, located by virtue of duplicate land certificate number 30–193. 5. 640 acres tract situated in Roberts County, located by virtue of duplicate land certificate number 30–188. 6. 640 acres tract situated in Roberts County, located by virtue of duplicate land certificate number 30–194. All of said certificates being issued to the Buffalo Bayou, Brazos & Colorado Railroad Company. The original petition was filed on the 14th of November, 1891, and on the 17th of May, 1892, the plaintiffs filed their amended petition, which was in substance the same as the original petition.

On the 23rd day of January, 1892, the defendant J. H. Jackson filed his answer, and on the 17th day of October, 1893, filed his amended answer, in which he disclaims as to four of the tracts described in plaintiffs' amended petition, and pleads not guilty as to two of said tracts, the said two tracts being first, the 640 acres tract in Cottle County, located by duplicate certificate number 30–200; and second,

the 492½ acres tract situated in Archer County, located by virtue of duplicate certificate number 30–201.

The pleadings filed by the other defendants in this cause are not noted in this statement, as none but the defendant Jackson have perfected their appeal.

On the 21st day of December, 1892, this cause was transferred from the District Court of the Twenty-sixth District, where it was originally filed, to the District Court of Travis County for the Fifty-third District. The cause was tried by the court without a jury on the 26th day of October, 1893, the court filing conclusions of law and fact, and resulted in a judgment for the plaintiffs against all the defendants for all the tracts of land described in plaintiffs' petition, to which judgment the defendant Jackson and all the other defendants excepted and gave notice of appeal. The other defendants failed to perfect their appeal.

The trial court found the following as its conclusions of fact and law:

"1. That on the 7th day of December, 1861, the Commissioner of the General Land Office of Texas issued to the Buffalo Bayou, Brazos & Colorado Railroad Company fifteen certificates of land scrip, each for 640 acres, to be surveyed in alternate sections, etc., and being numbered as follows: 16–158, 16–160, 16–161, 16–162, 16–163, 16–164, 16–165, 16–166, 16–167, 16–168, 16–170, 16–171, 16–172, 16–174, and 16–175.

"2. That on the 3rd day of August, 1863, the said Buffalo Bayou, Brazos & Colorado Railroad Company, by its proper officers, executed a transfer to said fifteen land certificates to M. D. Bullion, and delivered the said certificates, together with the transfer, to said Bullion. That said transfer was in the ordinary form, and contained covenants of warranty.

"3. That on the 23rd day of March, 1865, the said M. D. Bullion executed a transfer of said fifteen land certificates to J. J. Waldstein and delivered the said fifteen land certificates, together with the said transfer, to said Waldstein. That said transfer was in the ordinary form of such instruments, and contained covenants of general warranty.

"4. That J. J. Waldstein died on the 13th day of November, 1866, intestate, and at that date he was the owner of the said fifteen land certificates, and had same in his possession.

"5. That the plaintiffs (L. Waldstein et al.), in this cause are the sole surviving heirs of said J. J. Waldstein, deceased, and, as such heirs, are the owners of said certificates, which original certificates they produced on the trial of this cause, they having had possession of same since the death of said J. J. Waldstein.

"6. That on the 23rd day of July, 1872, the said M. D. Bullion made an affidavit stating that he was the owner of the said fifteen land certificates above described, and that he had never sold the same,

and that they were lost or mislaid; and he advertised the loss of said certificates in a newspaper published in Austin, Texas, according to law, notifying the public that if not heard from within ninety days he would apply to the Commissioner of the General Land office for duplicates.

"7. That on the 8th day of March, 1873, on the application of said M. D. Bullion, the Commissioner of the General Land Office issued and delivered to him duplicate certificates in lieu of fifteen of said certificates, the one not duplicated being number 16–172.

"8. That W F. Cummings acted as agent for said Bullion in obtaining the duplicate certificates aforesaid, and for his services in that matter, said Bullion gave him a part of the said duplicate certificates, and he bought from Bullion some of them, paying cash, but he is not now able to state which he paid cash for or which he received for his said services. That said Cummings was and is the son-in-law of said Bullion. That the transfer from said Bullion to said Cummings is lost, and was never recorded.

"9. That the Buffalo Bayou, Brazos & Colorado Railroad Company 648 acres survey in Cottle County, survey number 1, was located and patented by virtue of duplicate certificate number 30–196, which was issued as aforesaid in lieu of original certificate number 16–168, patent having issued on October 23, 1882, to the Buffalo Bayou, Brazos & Colorado Railroad Company. That the Buffalo Bayou, Brazos & Colorado Railroad Company 640 acres survey in Cottle County, survey number ——, abstract number 31, was located and patented by virtue of duplicate certificate number 30–200, which was issued as aforesaid in lieu of original certificate number 16–174, patent having issued on March 21, 1891, to the Buffalo Bayou, Brazos & Colorado Railroad Company. That the Buffalo Bayou, Brazos & Colorado Railroad Company 492½ acres survey in Archer County, survey number 1, was located and patented by virtue of duplicate certificate number 30–201, which was issued as aforesaid in lieu of original certificate number 16–175, patent having issued on August 6, 1886, to the Buffalo Bayou, Brazos & Colorado Railroad Company. That the Buffalo Bayou, Brazos & Colorado Railroad Company 640 acres survey in Roberts County, survey number 5, was located and patented by virtue of duplicate certificate number 30–193, which was issued as aforesaid in lieu of original certificate number 16–165, patent having issued on May 1, 1889, to the Buffalo Bayou, Brazos & Colorado Railroad Company. That the Buffalo Bayou, Brazos & Colorado Railroad Company 640 acres survey in Roberts County, survey number 7, was located by virtue of duplicate certificate number 30–188, which was issued as aforesaid in lieu of original certificate number 16–160, this survey not being patented. That the Buffalo Bayou, Brazos & Colorado Railroad Company 640 acres survey in Roberts County, survey number 9, was located by virtue of duplicate certificate number 30–194, which was issued as aforesaid in lieu of original certificate number 16–166, this

survey not being patented.   Said original certificates numbers 16–168, 16–174, 16–175, 16–165, 16–160, and 16–166 were part of the same certificates transferred by said Bullion to said Waldstein, as aforesaid.

"10.   That said duplicate certificates numbers 30–200 and 30–201 were two of the same certificates transferred by said Bullion to said Cummings.   That said Cummings caused the same, except 30–201, to be located by B. L. Frost, who was to have one-third thereof for locating the same; and the contract was in writing and has been lost.

"11.   That on the 2nd day of June, 1876, the said W. F. Cummings executed to the defendant John H. Jackson his certain four promissory notes, three of same being for $350 each, and one for $365.60, due respectively at three, six, nine, and twelve months from date; and on the same day, to secure the payment of said notes, Cummings executed to said Jackson a deed of trust on the following lands and land certificates:   One-fourth of 960 acres Vicente Zepada survey, in Young Territory; one-fourth of 1476 acres William Anglin survey, in Wichita County; one-sixth of 320 acres John Johnson survey, in Hardeman County; one-sixth of 320 acres James Humphries survey, in Hardeman County; one-fourth of 1107 acres A. Anglin survey, in Young Territory; 640 acres M. Carbajal survey, in Wichita County; one-third of 1476 acres James McKinney survey, in the Panhandle; one-third of 1920 acres S. S. Alsop survey, in the Panhandle; one-fourth of 1476 acres James Hanks survey, in Hardeman County; one-sixth of 177 acres John Morris certificate; one-sixth of 1476 acres Asobel C. Holmes certificate.   Also one-fourth of certificates and their surveys numbers 9, 10, 11, 61, 101, 102, 111, 112, 113, 115, 116, 117, and 303, issued to the Memphis & El Paso Railroad Company, each for 640 acres, all located in Clay District; one-sixth of 320 acres Joshua W. Johnson certificate; one-sixth of 640 acres M. M. Parkerson certificate; 1476 acres John A. McKinney certificate; one-fourth of 640 acres Houston Tap & Brazoria Railroad Company survey, in Young Territory.   Also all of four certificates issued to Buffalo Bayou, Brazos & Colorado Railroad Company, numbers 16–174, 16–167, 16–175, 16–171, and duplicate 30–190, for 640 acres each, all located in Hardeman County.   It is not shown by the evidence what consideration passed from said Jackson to said Cummings for the execution of said notes or trust deed, but it was admitted that it was a bona fide debt.   This deed of trust was never recorded in any county.

"12.   That on the 18th day of July, 1879, the said W. F. Cummings executed to said J. H. Jackson deeds of conveyance to said tract located in Archer county by virtue of said duplicate certificate number 30–201, and said tract in Cottle County located by virtue of duplicate certificate number 30–200, and other lands covered by the deed of trust.   The deed recites $—— cash, as the consideration, is in the usual form, and contains covenants of general warranty.   This deed was not recorded until ——.   The evidence shows that these deeds and other deeds were executed by said Cummings to said Jackson in payment of

the notes described in said deed of trust, and no money was paid when same were executed; and that at that time said Cummings was insolvent and unable to pay his debts, and that he is solvent now. That no money was paid to said Cummings at the time by said Jackson. That the title to some of the lands embraced in the deed of trust has failed.

"13. That said Cummings, in purchasing said certificates from Bullion, was informed that Bullion had executed a transfer in blank for the certificates and placed the same in the hands of one F. M. Hanks to make a particular transaction for Bullion, but was informed by Bullion and Hanks that the blank in such transfer was never filled up by Hanks to any one, but that said transfer and the original certificates were lost by Hanks while traveling on a steamboat on the Mississippi River, and said Cummings had no other information as to said certificates ever having been sold. That said Jackson had no knowledge of any sale by Bullion at the time he took the deed of trust herein before mentioned, nor at the time he purchased said duplicate certificates numbers 30–200 and 30–201, and the other lands as aforesaid.

"13½. That the records of the State Comptroller's office at Austin show that on January 17, 1891, certain of said lands were sold to J. H. Collett for taxes for the years 1877, 1878, and 1879, and that the same were again sold to said Collett on June 25, 1885, for taxes for year 1883, and that said Collett paid the taxes in his own name on said land for years 1880, 1881, and 1882. That said Collett, as agent of the defendant J. H. Jackson, paid the taxes on said land for years 1884, 1885, 1886, 1887, and 1888. That in buying said land at tax sales and paying taxes thereon in his own name, J. H. Collett in fact acted for and as agent of J. H. Jackson, but this fact was not disclosed by the said records at the Comptroller's office. On September 16, 1885, J. H. Collett executed to said J. H. Jackson, a deed of release of said land from the tax sales to him, which said deed of release, together with his deed from the Comptroller, was duly recorded in the proper county where the lands were located.

"14. That the defendant James P. Crane found in the General Land Office of Texas the said Bullion's application for said duplicate certificates, and examined the Comptroller's office and found the record as to payment of taxes as above recited, and examined the records of the counties where the lands were situated, and failing to find any transfer from said Bullion of record, he hunted up said Bullion and found him in Mason County, Texas, January 13, 1887. Said Bullion then and there told defendant Crane that he had sold a part of the said fifteen duplicate land certificates, but could not tell which he had sold, that he had not sold all of them, and that the records ought to show what were sold. Thereupon said Crane paid said Bullion $300 and gave him his note for $300 more, to be paid so soon as one suit to quiet title to the land had been decided in favor of said Crane, it being understood that the transfer from the Buffalo Bayou, Brazos & Colorado Railroad

. Company to said Bullion had been lost, and that a suit would be necessary to supply this link in the title. In consideration of the money paid him, and the note aforesaid, said M. D. Bullion, joined by his wife, executed to said Crane a quitclaim deed, in which the property purporting to be conveyed was described as follows: 'All our individual and community right, title, and interest in and unto any and all tracts or parcels of land lying in the State of Texas, that we may be possessed of, or in which we may have any right, title, interest, or claim of any nature whatsoever; excepting, however, the James H. Collison survey in Wise County, and also all lands lying and being situate in Hunt County. It being our intention by this deed to convey to said Crane all lands situated in the State of Texas that we own, with the exceptions above mentioned.' This deed was recorded in Wichita County, April 15, 1890. The said Crane agreed with said Bullion to respect all transfers made by said Bullion of any of the lands located by said certificates.

"15. That one J. M. Thornton furnished said Crane the $300 cash paid to said Bullion as aforesaid, and the agreement between Thornton and Crane was that Thornton was to furnish the money to pay for and recover the land (costs, attorney's fees, etc.), and Crane was to sell the land, pay Thornton back the money advanced, and they were then to divide between them equally the profits of the transaction. In paying money and taking deed from Bullion and wife, said Crane acted under instructions from, and for, said Thornton in the matter.

"16. That on the 17th day of September, 1887, the said M. D. Bullion executed to said James P. Crane another instrument or deed, describing the property and interest thereby conveyed, as follows: 'Have granted, bargained, sold, released, and conveyed, and by these presents do grant, bargain, sell, convey, and release unto the said James P. Crane, his heirs and assigns, the following described property, to wit: All lands and realty of every and any nature whatsoever that I am possessed of, or which are in my name, or in which I may have any interest, right, title, or claim to, of any nature whatever, lying and being situated in the State of Texas, with the exception of those lands lying and being in the counties of Hopkins, Hunt, and Wise, which are reserved herein. It being my intention to surrender all rights to all my lands in the State of Texas except in the said counties mentioned.' This deed contains covenants of general warranty. No money was paid for its execution. The consideration for it was the $300 cash paid said Bullion January 13, 1887, and the note that day executed being the consideration for the quitclaim deed referred to in paragraph 14 hereof, the said note of date January 13, 1887, for $300, being copied in this deed and stated to be part of the consideration. This deed was recorded in Wheeler County (Roberts County records) December 1, 1887, and was recorded in Wichita County, April 15, 1890.

"17. That in April, 1888, James P. Crane wrote M. D. Bullion, telling him that his quitclaim deed was not good, and asked him to

sign the warranty deed he inclosed him, telling him this act would aid him (Crane) in recovering the lands, and thereby mature the note he had given him. Bullion did not execute the deed, but came to Austin May 17, 1888, and said Crane paid him $50 on the note aforesaid, dated January 13, 1887, and said Bullion then executed to said Crane deeds to all the lands involved in this suit and other lands, containing clauses of general warranty. The only consideration for these deeds was $50, credited on said note of date January 13, 1887.

"18. That in August, 1889, the plaintiff J. L. Hume purchased from J. M. Thornton his interest in the lands sold by Bullion to Crane. That the agreement between Hume and Thornton was that Hume was to pay, and he did pay, Thornton the sum of $485 cash, for Thornton's interest; buying simply such title and claim as Thornton had in the land—that is, he simply took Thornton's place in the transaction, assuming to carry out Thornton's contract with Crane—the deeds being in the name of said Crane, as aforesaid. The money he paid Thornton was the money already advanced by Thornton, with interest.

"19. That before purchasing Thornton's interest in the transaction, said Hume was not informed by either Thornton or Crane that Bullion had ever executed said two deeds, one dated January 13, 1887, and the other dated September 17, 1887, but was shown the warranty deeds executed by the said Bullion to said Crane, of date May 17, 1888. And that he submitted these deeds and other papers above referred to, to his lawyer, and was informed that if the title could be obtained from the original grantee to Bullion, that, in the opinion of his lawyer, the Crane title would be good; and upon this opinion he acted in buying out all the claim and interest in the matter owned by Thornton.

"20. That on the 22nd day of October, 1889, J. L. Hume instituted suit in the District Court of Travis County for the 640 acres in Clay County, against Crane and Frost, for partition, and against the Galveston, Harrisburg & San Antonio Railway Company, as the corporate successor of the Buffalo Bayou, Brazos & Colorado Railroad Company, to divest the legal title out of the Buffalo Bayou, Brazos & Colorado Railroad Company and vest same in Hume, to the extent of one-third of the said Clay County 640 acres tract of land included in said suit. That in this suit judgment was rendered for said Hume, Crane and Frost, divesting title out of the said Buffalo Bayou, Brazos & Colorado Railroad Company and vesting same in them, and for partition equally between said Hume, Crane, and Frost. And said Hume and Crane sold their interest in said 640 acres in Clay County to said Frost for $1080 cash, and they executed an agreement with Frost, recognizing that he owned an undivided locative interest of one-third in the lands now in controversy in this suit, and they each owned an undivided one-third interest therein; this instrument being a transfer to said Hume of the Thornton interest.

"21. That on the 25th day of June, 1890, the said James P. Crane executed to J. L. Hume a warranty deed, purporting to convey to said

Hume his (Crane's) undivided one-third interest in the lands in controversy in this suit, together with other lands; and at the time of the execution of said warranty deed, said Hume executed to said Crane, as a part of the same transaction, an instrument in writing, reciting that the title conveyed to him by said Crane, as to the land in controversy in this suit, was held in trust by Hume, to secure him in the payment of all money paid out by him on account of the lands in controversy.

"22. That no money has been paid out by said Hume upon the lands in controversy which would create a lien in his favor under the said agreement with Crane; but said Hume has become liable to pay two-thirds of court costs, and two-thirds of a reasonable attorney's fee in this case.

"23. That in making the said contract with Crane, of date June 25, 1890, as to the security for the money agreed to be paid out by Hume in clearing up the title to the tracts of land in controversy, Hume had no notice of the claim of the plaintiffs or the said defendant J. H. Jackson, except such notice as is chargeable to him from the records above referred to; but this agreement as to costs and expenses was but reducing to writing the agreement made between Thornton and Crane at the time of the original purchase, which agreement Hume had verbally assumed when he bought Thornton's claim and took his place in the transaction.

"24. That neither of the parties to this suit have ever had actual possession of the lands in controversy.

"25. That the Buffalo Bayou, Brazos & Colorado Railroad Company has never asserted title to any of the lands involved in this suit.

"26. That the lands involved in this suit, except the 492½ acres in Archer County, were located by B. L. Frost in the year 1876, for W. F. Cummings. That he had a contract in writing with said Cummings for one-third interest in same for locating, and that said contract has been lost and was never recorded.

"*Conclusions of Law.*—1. That the said three instruments of writing from Bullion to Crane conveyed to Crane, for himself and Thornton, only such interest as Bullion then had in the land in controversy. And Bullion having twice before sold the certificates—once selling the originals and once the duplicates by virtue of which said lands were located—he had no interest to convey, and none passed to Crane or Thornton by virtue of said deeds.

"2. That Hume, having purchased only such equitable interest in said land as Thornton had, took no interest by said deed, as Thornton had no interest to convey.

"3. That the transfer of the land certificates from Bullion to J. J. Waldstein passed the title to said certificates to said Waldstein; and his heirs, the plaintiffs herein, are the owners of the superior equitable title to said lands, unless the defendant Jackson has a superior title thereto.

"4. That the deed of trust from Cummings to Jackson, and the deed thereafter executed by Cummings to Jackson, do not make Jackson a lien-holding creditor to the extent to render the unrecorded deed from Bullion to Waldstein void as against Jackson, but said trust and deed to Jackson from Cummings amount simply to a sale of the land, and no money having been shown to have been paid by Jackson on the execution of either of said papers, but both being executed in consideration of a pre-existing debt, he is not an innocent purchaser, and his equitable title is not superior to that of the plaintiffs. Bonner v. Grigsby, 84 Texas, 330.

"5. That the equities of the plaintiffs are equal to, if not superior to, those of defendant Jackson; and the plaintiff's equities being prior in point of time, they have the better title."

*Opinion.*—This court adopts the conclusions of fact and law as found by the trial court, and in addition we may say, that some of the principal questions raised in this case were decided by this court in the case of Jackson v. Waldstein, 27 Southwestern Reporter, 27. This court has also recently decided, in the case of New York and Texas Land Co. v. Hyland, 8 Texas Civil Appeals, 601, that a purchaser of a land certificate before location is subjected to the same rules that apply to a purchase of other personal property, and that it is not the subject of an innocent purchase unless some element of estoppel may be connected with its acquisition, which is not the case here.

In First National Bank of Austin v. Mortgage Co., 6 Texas Civil Appeals, 61, it is held, that a mortgagee stands in the same attitude as a purchaser, and that he can not assert a right as an innocent purchaser when his mortgage is based upon a pre-existing debt. On this point the decision was approved by the Supreme Court. Other cases support these views: McKamey v. Thorp, 61 Texas, 648; Spurlock v. Sullivan, 36 Texas, 511; Steffian v. Bank, 69 Texas, 517; Bonner v. Grigsby, 84 Texas, 331; Black v. Caviness and Patterson, 2 Texas Civil Appeals, 121. The case of National Bank v. Mortgage Co. was, it is true, a case involving the transfer of personal property, but we apprehend the same rule of construction would apply to sales of real property, as article 4332, Sayles' Civil Statutes, is very similar to article 3190b, in so far as each affords protection to creditors and purchasers.

The burden rested upon Jackson to prove the consideration that would support his mortgage. It is clear as to his purchase that he paid nothing of value at that time. If he desired to base his right as an innocent purchaser upon the right that he acquired as an innocent mortgagee without notice, he should have shown a valuable consideration for that mortgage.

The judgment is affirmed.

*Affirmed.*

Delivered March 13, 1895.