### STOMA v. FILGO et al.

### No. 10598.

Court of Civil Appeals of Texas. Dallas.

April 3, 1930.

Read, Lowrance & Bates, of Dallas, for appellant.

Reid & Erhard and William J. R. King, all of Dallas, for appellees.

### VAUGHAN, J.

Appellant, J. B. Stoma, instituted this suit in one of the justice courts of precinct 1 of Dallas county, against L. R. Filgo, R. R. Holmes, and Wayne Plummer, to recover the sum of $150 with interest, alleged to be due appellant by said defendants on a written lease contract. Judgment was rendered in that court in favor of appellant for $151.27 against L. R. Filgo and Wayne Plummer, and the case was dismissed as to R. R. Holmes, who was not served with citation. Under writ of certiorari obtained by appellee, L. R. Filgo, the case was moved to and tried by the county court at law No. 1 of Dallas county, the trial so had resulting in a verdict and judgment in favor of appellees, L. R. Filgo and Wayne Plummer, from which appellant has duly prosecuted his appeal to this court.

By appropriate allegations appellant sought to recover two delinquent monthly installments of $75 each, alleged to be owing him under a written lease contract made by appellant with appellees and one R. R. Holmes, dated November 21, 1927, covering a period of 50 months beginning December 21, 1927, and ending February 20, 1932. Appellant further alleged: That the rent under said lease was payable at the rate of $75 per month on the 21st day of each month during said lease period; that the two installments of rent sued for became due on the 21st of July and 21st of August, 1928, respectively; that the premises so leased to appellees and R. R. Holmes was owned by appellant and described as follows: Situated in the city of Dallas, state of Texas, and being the oil and gas station located at 5134 Richards avenue in said city of Dallas, Tex., at the corner of Richards and Henry avenues. As to appellees' answer, it is only necessary to state that same contained a general denial and special pleas alleging: (a) That as an inducement to said Filgo to sign said lease contract appellant, acting through and by his agent, Sam Cusha, represented that a landlord's lien was retained upon all of the equipment situated upon the leased premises for the payment of rentals and lease money as same

accrued; that he (Cusha) would protect all parties himself on the contract; that appellees relied upon said representations and signed said lease agreement and became sureties thereon; that mortgages given thereon by subsequent tenants were allowed to become fixed as prior liens upon and against said property in preference to the landlord's lien, due to the negligence and fault of appellant's agent, Cusha; that by Cusha's failure to protect said Filgo, he was discharged from liability on said contract; that thereafter, with the knowledge of Cusha and Stoma, said lease was transferred, sold, and possession of the premises given, without the knowledge and consent of Filgo, by one R. R. Holmes to one John Burrage, and said Stoma, through his agent Cusha, represented that he would get an additional surety on said contract by the name of Miss Minnie Burrage, a sister to the then occupant of the lease premises in question; that said agent Cusha failed to obtain the signature of Miss Minnie Burrage, allowed the station to be transferred and sold again without obtaining additional surety on said lease contract, all of which consisted of fraudulent representations, which deprived appellee Filgo of additional security and constituted a discharge of his liability on said lease contract.

The judge of said county court refused appellant's request for peremptory instruction and submitted the case on special issues, said issues and answers thereto being as follows:

"No. 1: At the time of the sale, if any, to John Burrage of the property covered by the lease in this suit, did Sam Cusha as agent for J. B. Stoma agree with L. R. Filgo that he would procure the endorsement of said lease by Miss Minnie Burrage? Answer, 'Yes.'

"No. 2: Did Sam Cusha as agent for J. B. Stoma represent to L. R. Filgo that the landlord's lien would be preserved on the property covered by the lease in this case for the purpose of protecting all parties, including said Filgo, against loss or subsequent encumbrance of such property? Answer, 'Yes.' "

On this verdict judgment was rendered in favor of appellees that appellant take nothing by his suit against them.

Of the several assignments of error presented by appellant, it is only necessary to discuss the one presenting as error the refusal of the trial court to instruct the jury to return a verdict in appellant's favor. Following are the uncontroverted material facts found by this court to have been established by the evidence: That appellant by a written lease contract dated the 16th day of February, 1927, leased to one J. H. Cogswell for a period of five years the oil filling station described in his pleadings, said lease term beginning February 21, 1927, and ending February 20, 1932, at a rental of $75 per month; that said Cogswell on April 13, 1927, with appellant's permission, transferred the unexpired term of said lease to one W. L. Edwards; that said Edwards on May 5, 1927, transferred the then unexpired term of said lease to appellees, L. R. Filgo and Wayne Plummer; that on the 21st day of November, 1927, the above lease contract was canceled by the execution of a new lease contract by appellant to appellees and one R. R. Holmes, leasing said property for a term of 50 months beginning December 1, 1927, and ending February 20, 1932, at a rental of $75 per month, payable monthly in advance on the 21st day of each and every month during said lease term; that said renewal lease was executed to and by appellees and said R. R. Holmes as lessees; that without the consent of appellant thereto first obtained, said lessees permitted said lease premises to be occupied at different times by one W. E. Glass, one John Burrage and one ——— Smith, under some character of agreement between said parties, respectively, the terms of which are not disclosed by the evidence; that the personal property constituting the equipment for conducting the oil and gas business and owned by appellees, or some one of them, was sold by appellees or some one of them, apparently by said R. R. Holmes, to said John Burrage; that appellant, through his agent, Cusha, collected from time to time all of the rent paid by the different parties who occupied said lease premises; that prior to and at the time appellant filed his suit there had accrued and was due under said lease of date November 21, 1927, on which this suit was filed, rents for the months of July and August, 1928, in the sum of $75 per month; that appellant was not the owner of the property sold by appellees, or one of them, to said John Burrage, or in any manner interested in said sale being made, or was in any respect instrumental in the making of same; that said sale had been made to and said Burrage placed in the possession of the lease premises without any previous knowledge of said transactions by appellant or his agent, Cusha; that the unexpired term of said lease contract to appellees and Holmes was not transferred to said John Burrage with the consent of appellant; that some time after the execution of the lease to appellees, and without knowledge thereof on the part of appellant or his agent, Cusha, a lien was created by said R. R. Holmes, one of the lessees, on the "equipment" above mentioned; that appellant had no interest in having the unexpired term of said lease transferred to said Burrage, or that he should become the purchaser of said equipment; that there was no consideration moving to appellant for the making of the promise by his agent, Cusha, to protect said Filgo from foreclosure under the mortgage existing against same in reference to which said Cusha testified, "I did not notify her (referring to Miss Minnie Burrage) they were going to foreclose the mortgage on that equipment

out there. As to whether I told them I had a lease and was going to protect it against foreclosure, I told them I would protect them. A lien was created on this equipment sometime after Mr. Filgo and Plummer and R. R. Holmes took over the station and had run it for several months. R. R. Holmes created the lien"; or for the promise made by said Cusha, as the agent of appellant, that he would have Miss Minnie Burrage to sign the lease contract as surety if they would sell the equipment to John Burrage; that in all of the transactions and dealings with appellees and said Holmes, in so far as appellant was involved, he was represented by said Cusha as his agent; that Sam Cusha, and not appellant, promised to protect appellees from any liability on said lease contract, as shown by the following allegations contained in appellees' amended answer, viz.: "The appellant, through and acting by his agent Sam Cusha, represented that a landlord's lien was retained upon all the equipment situated upon the premises covered by said lease for the payment of rental and lease money as same accrued, and that he (Cusha) would protect all parties himself on the contract; that appellees relied upon said representation and signed said lease agreement and became sureties thereon; that subsequent mortgages given by subsequent tenants thereon were allowed to become fixed as prior liens upon and against said property in preference to the landlord's lien, due to the negligence and fault of appellant's agent, Cusha."

■ Under the above undisputed facts, the cause should not have been submitted to the jury, same not supporting in any material respect any one of the defenses presented to appellant's cause of action. Appellees were two of the lessees to the contract with appellant, of date November 21, 1927, whereby the relationship of landlord and tenant was created, and there existed perforce of that relationship a preference lien under the law in favor of appellant, as landlord, upon all property of said lessees, the tenants, in the buildings located on the rented premises, for the payment of all rents due and to become due under the terms of said lease. The existence of this lien was the only interest that appellant had in said equipment, whether same was owned by appellees jointly, or by either one of them, and the mere act of selling same to John Burrage by appellees, or either one of them, could have been of no moment to appellant as his said lien was not thereby destroyed or impaired. As to the lease contract, appellees and said Holmes were bound thereon as lessees for the payment of the rent due and to become due by the terms of said contract, and certainly it was not to the interest or advantage of appellant for appellees to transfer the unexpired term of the lease to said Burrage, a party not financially responsible. Therefore, appellant's agreement to have Minnie Burrage sign the lease as surety for John Burrage was but an obligation to render aid and assistance to accomplish that which could only redound to the benefit of appellees and to the detriment of appellant, unless he should discharge the burden of securing Miss Minnie Burrage to become surety for the payment of rents by John Burrage under the terms of said lease, an undertaking not supported by a consideration either good or valuable in law.

■ As to appellant protecting appellees on their contract by retaining his lien upon the equipment, and preventing other liens from being created thereon; by the very terms of the lease contract they represented and declared "that the equipment and fixtures now located on said premises are free from any and all liens, debts and encumbrances"; therefore by said agreement appellant assumed the role of curator, whereby he would perform for appellees that service which, they being sui juris, were under the law required to discharge for themselves. In other words, an agreement on the part of appellant to protect appellees against their own failure or inability to prevent their own property from becoming incumbered by liens other than the lien that the law created in favor of appellant. Furthermore, this was an obligation binding only upon, and to be performed by, Sam Cusha, as same was not made by him as the agent of appellant, as is clearly established by the following allegation contained in appellees' amended original answer, namely, "And that he (Cusha) would protect all parties himself on the contract."

■ The collection by appellant of rents due him under his lease contract with appellees and said Holmes, from the different parties who were permitted by said lessees to occupy the lease premises, did not create the relationship of landlord and tenant, or that of lessor and lessee, between appellant and either one of said parties from whom said collections were made, but was only a waiver of the following provision of section 4 of the lease contract sued upon, viz., "that the lessees shall not assign this agreement or underlet the premises, or any part thereof, without the consent of the lessor in writing," and a recognition of the subletting to said parties as if the consent of appellant had been thereto first obtained by said lessees, especially so as the collections made by appellant were with the knowledge of said lessees, and without any objection on their part applied to the payment of the rent due appellant under said lease.

Under the findings of fact made by this court and the findings of fact made by the jury, it is clear that appellees failed to establish any one of the defenses urged by them to appellant's cause of action, as it affirmatively appears therefrom that appellant was not

guilty of any act or conduct that altered, changed, or impaired in any respect the liability of appellees as lessees to pay appellant the rent due him under the lease contract sued upon. The judgment of the county court is therefore reversed, and judgment is here rendered in favor of appellant against appellees for the principal sum of $150, with interest on $75 of said sum from July 21, 1928, and on $75 thereof from August 21, 1928, at the rate of 6 per cent. per annum, and for all costs incurred in said justice and county courts and in this court.

Reversed and rendered.