For the reason stated, the judgment is reversed and the relator is ordered discharged.

Estelle SHWIFF, Appellant,

v.

CITY OF DALLAS, Appellee.

No. 15595.

Court of Civil Appeals of Texas.

Dallas.

July 24, 1959.

Rehearing Denied Oct. 2, 1959.

Marvin G. Shwiff, Dallas, for appellant.

H. P. Kucera, City Atty., N. Alex Bickley, Ted P. MacMaster and John W. Davidson, Assts. City Atty., Dallas, for appellee.

DIXON, Chief Justice.

This suit was filed by appellee City of Dallas to enforce a landlord's lien which it claims is superior to appellant's claim of title to certain property which the city as-

serts is affixed to leased realty. Appellant Estelle Shwiff claims title to the property free and clear of appellee's lien by virtue of a constable's bill of sale executed following foreclosure of a chattel mortgage lien. Estelle Shwiff had been substituted as party defendant following the death of her husband, Sol G. Shwiff, purchaser at the foreclosure sale. A summary judgment was rendered in favor of the city.

On November 4, 1947, Barish Produce Company, a corporation, with Joe Barish as president, borrowed $5,000 from Sol G. Shwiff, Alfred Shwiff, Hyman Shwiff, Morris Levine and Morris Robinson, all of whom were stockholders in Barish Produce Company, and all of whom were related by marriage to Joe Barish. This loan was not secured by a mortgage of any kind on the property of Barish Produce Company.

On September 14, 1948, Barish Produce Company, as tenant, entered into a ten year written lease agreement with the City of Dallas, as landlord, covering Units 13 and 14 in the Dallas Municipal Market Building at a rental of $578.98 per month. The lease also provided for a rental of $650 per month on a month to month basis should there be any holding over by lessee after expiration of the lease term. This lease contract was not filed for record.

The written agreement further expressly provided that the city should have a lien as security for rent upon "all of the goods, wares, chattels, implements, fixtures, furniture, tools and other personal property which are or may be put on the demised premises."

Soon after entering into possession of the leased premises Barish Produce Company installed a refrigeration system for the purpose of cooling the leased units.

By May 7, 1955, Barish Produce Company had become involved in financial difficulties, and on that date executed a chattel mortgage upon its assets, including the refrigeration system, to Sol G. Shwiff, Alfred Shwiff, Hyman Shwiff, Morris Levine and Morris Robinson. This mortgage was to secure the $5,000 loan originally made in 1947. The mortgage was recorded in the Chattel Mortgage Records of Dallas County, Texas, but it was not recorded in the book endorsed "chattel mortgage records on realty" in accordance with Art. 5498, V.A.C.S.

In May 1957 the mortgagees filed suit to foreclose their chattel mortgage lien against the assets of Barish Produce Company. Judgment was entered in their favor. On July 15, 1957, at a constable's sale the assets of Barish Produce Company, including the refrigeration machinery, were sold to Sol G. Shwiff for $5,000. Sol G. Shwiff, the purchaser, never did take possession of the property, or remove it from the leased premises. The property was allowed to remain on the premises in possession of Barish Produce Company. The city was not notified of the sale.

Barish Produce Company failed to meet its rental payments due in August and September 1957, and the city terminated the lease contract. However the Company continued in possession of the premises as a holdover through the month of January 1958.

Sometime prior to November 1, 1957, the city filed suit against Barish Produce Company and Sol G. Shwiff for rentals due, for $600 damages to a wall, and for foreclosure of its landlord's lien. In an amended petition filed February 21, 1958, the city sought recovery of judgment for $4,357.96 together with foreclosure of its lien. The amount of the damages to the wall was not then and is not now contested. The property sold to Sol G. Shwiff at the constable's sale was still on the leased premises in possession of Barish Produce Company, the tenant.

Motions for summary judgment were filed by the City of Dallas and by Sol G. Shwiff. On March 14, 1958, judgment was rendered in favor of the city against Barish

Produce Company for $4,357.96 and for foreclosure of its landlord's lien.

On December 8, 1958, the motion for summary judgment of the city against Estelle Shwiff in regard to priority of its lien was sustained, and the motion of Estelle Shwiff who had been substituted as a party for Sol G. Shwiff, deceased, was overruled. Summary judgment was accordingly entered in behalf of the city for $4,357.96 and foreclosure of the city's lien as superior to Estelle Shwiff's claim of title to "all the refrigeration machinery and its accessories, motors, compressors, attached accessories, pipes, refrigerating units and cooling tower plant with its accessories." It will be noted that the foreclosure judgment in favor of the city did not include furniture, chairs, desks and other personal property which Sol G. Shwiff had bought at the constable's sale in July 1957. It included only the machinery and attached accessories and the cooling plant and accessories.

In her points on appeal Nos. 1 and 2 appellant Estelle Shwiff asserts error on the part of the trial court in overruling her motion for summary judgment and in sustaining appellee's motion.

In support of her first two points appellant asserts that when the rentals became in arrears in August 1957, the property in controversy was no longer owned by the tenant, Barish Produce Company, but had become the property of Sol G. Shwiff, who had bought it at the constable's foreclosure sale on July 15, 1957; and since a landlord's lien attaches only to property of the tenant and not to property of others in possession of the tenant, the city did not have a lien on the property in controversy. West Development Co. v. Crown Bottling Co., Tex.Civ.App., 90 S.W.2d 887.

■ It is appropriate to point out here that Shwiff's claim of title, being derived from a mortgage foreclosure sale, cannot be accorded a higher priority rating than can be accorded the mortgage which was

foreclosed. The rule is especially applicable in this case since Sol G. Shwiff, the purchaser at the foreclosure sale, was himself one of the mortgagees. So the question before us narrows down to this: was the lien claimed by the city as landlord superior to the chattel mortgage which the tenant, Barish Produce Company, executed May 7, 1955, to Sol G. Shwiff, Alfred Shwiff, Hyman Shwiff, Morris Levine, and Morris Robinson?

■ Art. 5238, V.A.C.S., gives to a landlord a lien on property of the tenant located in a leased building. All other claimants of interest in the tenant's property are held to have constructive notice of this statutory lien in behalf of the landlord. Lehman v. Stone, 4 Willson Civ.Cas. Ct.App. § 121, 16 S.W. 784; Stoma v. Filgo, Tex.Civ.App., 26 S.W.2d 1100; 27 Tex. Jur. 170. So the five persons who took a mortgage on the personal property of Barish Produce Company did so with constructive notice of the statutory landlord's lien of the City of Dallas. On the other hand because of the failure of the mortgagees to file their mortgage for record in the book endorsed "chattel mortgage records on realty" in accordance with Art. 5498, V.A.C.S., the city did not have constructive notice of the mortgagee's claim of a lien against the fixtures in the leased building. The record before us shows that the city did not have actual notice or knowledge of the mortgage or the subsequent foreclosure sale until this controversy arose. Under these circumstances we believe that the statutory landlord's lien of the city on the fixtures is superior to the unrecorded chattel mortgage lien upon which appellant's claim of title to the fixtures is based. Lynch v. Cock, Tex.Civ.App., 195 S.W.2d 773.

■ Appellant relies on that part of Art. 5238 which provides that rents to become due shall not continue or be enforced for a longer term than the current contract year whether the same be in the first or any other year of such lease or rental contract.

We do not believe that the above statutory rule is applicable here for two reasons: (1) the rents involved in this controversy are rents already accrued and past due, they are not rents to become due in the future; (2) because the mortgage relied on by Shwiff was not recorded as required by Art. 5498, V.A.C.S., the city did not have constructive knowledge (and the record shows it did not have actual knowledge) of the claimed mortgage lien against the fixtures, hence the landlord's lien should prevail. Lynch v. Cock, Tex.Civ.App., 195 S.W.2d 773; General Motors Acceptance Corp. v. Bettes, Tex.Civ.App., 57 S.W.2d 263; Universal Credit Co. v. Gasow-Howard Motor Co., Tex.Civ.App., 73 S.W. 2d 909, 911.

■ We are aware of cases holding that a mortgage which is recorded during one current year of a lease contract is superior to a statutory landlord's lien for rents which accrue during a subsequent contract year. 27 Tex.Jur. 167. But such holdings are not controlling here, for the mortgage so far as the fixtures are concerned was unrecorded. Art. 5498, V.A.C.S. The rule is that if the tenant has occupied the premises for any part of any of the series of contract years the landlord has a statutory lien to secure the rental due for the balance of the year, or lesser rental period. 27 Tex.Jur. 137. In the case now before us the city has a statutory landlord's lien on the tenant's fixtures to secure the past due rent sued for, which landlord's lien is superior to the unrecorded mortgage which was foreclosed, and said landlord's lien is therefore superior to the title to the fixtures which Shwiff acquired at the foreclosure sale.

■ But the city need not look to its statutory lien alone to support its claim. Under the terms of paragraph 24 of the written lease agreement the tenant expressly agreed that the city should have a lien on the tenant's property to secure payment of the rent. Such a contractual landlord's lien has been construed to be a chattel mortgage.

Leonard v. Burton, Tex.Civ.App., 11 S.W.2d 668 (Syl. 7). As heretofore stated, the city did not file its chattel mortgage for record pursuant to Art. 5498, V.A.C.S.; but neither did the mortgagees of the foreclosed mortgage.

■ Nevertheless the city claims that Sol G. Shwiff had constructive notice of the existence of the landlord's lien because he was a member of the Board of Directors of Barish Produce Company, a corporation. The weakness of the city's position on this point is that it is not definitely established that Sol G. Shwiff was a member of the Board of Directors. The only evidence on the question is the testimony of Joe Barish as found in his deposition. At one place Barish testified that Shwiff was a member of the Board; at another place he testified that Shwiff was not. These conflicting statements by Barish created a fact question. Ford v. Panhandle & S. F. Ry. Co., 151 Tex. 538, 252 S.W.2d 561, 563; Reserve Life Ins. Co. v. Everett, Tex.Civ.App., 276 S.W.2d 926. Since this is a summary judgment proceeding the judgment cannot be supported on the theory that Shwiff had constructive notice of appellee's contract landlord's lien because he was a member of the tenant's Board of Directors.

■■ However, on another ground we must rate the city's contract lien superior to the foreclosed chattel mortgage. The city's lease, which included the contract lien provision, was executed September 14, 1948. The chattel mortgage on which appellant's claim of title depends was not executed until May 7, 1955. So we have here an instance of two chattel mortgages neither of which was filed for record pursuant to Art. 5498, V.A.C.S. When neither of two mortgages has been filed for record we believe that the mortgage which was first in order of time should prevail. 9 Tex.Jur. 149. This is especially true if the holder of the later mortgage cannot be considered an innocent mortgagee for value as we believe is the case here.

█ It is true that at the time the second mortgage was executed the rentals due by the tenant under the lease contract were not in arrears. But the rentals to become due in the future under the terms of the lease contract were definite, binding and certain as to both parties. It is well established that the debt secured by a chattel mortgage need not be a present existing debt but may be a debt to arise in the future. 9 Tex.Jur. 83, 136. And such mortgage for a debt to arise in the future is superior to a later executed mortgage for an existing debt if the legal obligations of the parties for the creation of the future indebtedness are binding, certain and definite, not merely optional on the part of the mortgagee. G. M. Carleton Bros. & Co. v. Bowen, Tex. Civ.App., 193 S.W. 732. See also Cason, Monk & Co. v. Baker, Tex.Civ.App., 62 S.W.2d 592; Cattle Raisers' Loan Co. v. First Nat. Bank of Decatur, Tex.Civ.App., 54 S.W.2d 857. Such a situation seems to present itself to us in the present case under the terms of the lease contract entered into between the City of Dallas and Barish Produce Company.

█ Furthermore, since the chattel mortgage of May 7, 1955, was given to secure a pre-existing debt, we do not consider that the mortgagees of the said mortgage were innocent mortgagees for value, or that Sol G. Shwiff, who was one of the mortgagees, was an innocent purchaser for value at the foreclosure sale. First Nat. Bank of Austin v. Western Mtg. & Inv. Co., 6 Tex. Civ.App. 59, 24 S.W. 691, reversed on other grounds 86 Tex. 636, 26 S.W. 488; Jackson v. Waldstein, 10 Tex.Civ.App. 156, 30 S.W. 47, 51; Avery v. Mansur & Tebbetts, Tex.Civ.App., 37 S.W. 466, 467.

Appellant's first two points on appeal are overruled.

In her third point on appeal, asserted in the alternative in the event her first two points should be overruled, appellant says there is in the case a material issue of fact: whether the office furniture, equipment and machinery was of such a nature that the chattel mortgage should have been recorded under the terms of Art. 5498, V.A.C.S.

We must point out in connection with our consideration of this point that the judgment from which this appeal was taken does not award the city a foreclosure of its landlord's lien on the tenant's office furniture. The only properties on which the city is granted a foreclosure are "all the refrigeration machinery and its accessories, motors, compressors, attached accessories, pipes, refrigerating units, cooling tower plant, with its accessories in Units 13 and 14 * * *".

█ The city's motion for summary judgment is supported by an affidavit by J. D. Walton who states that it is his duty to exercise general supervision over the City's Market Building in which the leased premises are located, that he has personal knowledge of every statement contained in his affidavit, and that he is competent to testify to the matters stated therein. We quote further from his affidavit: "In the basement of Unit 14, Barish Produce Company constructed a concrete block on which to rest heavy ice machinery equipment for the cooling of the storage rooms within Units 13 and 14. The compressors and refrigeration machinery were placed upon this concrete block and connected with pipes running throughout the units which were bolted into the walls and ceilings. On top of the roof of Units 13 and 14 a large cooling tower was installed and is supported by guy wires bolted into the sides of the building. Holes were cut through the roof, ceilings, and walls of said units so that the pipes of the refrigeration system could be installed. The refrigeration units in the storage rooms are bolted into place in the ceilings. The refrigeration machinery is extremely heavy, weighing in excess of one (1) ton. The refrigeration machinery, compressors, pipes, refrigeration units and cooling towers are affixed in such a permanent manner to Units 13 and 14 that to remove same would reduce

**604**

the value of such equipment to its salvage value."

The city's motion for summary judgment is also supported by pictures of the property in question, which pictures corroborate Walton's affidavit.

In opposition to the above affidavit and pictures appellant offers a controverting affidavit which we must hold is not sufficient to create a fact issue under Rule 166–A(e), Texas Rules of Civil Procedure. It is made by Marvin P. Shwiff, attorney for appellant, who denies that the machinery in question is all firmly and permanently affixed to the extent that removal of same would reduce it to salvage value, and further that some of said fixtures are so attached and others are not. These statements, if accepted as true, do not controvert the description of the property contained in Walton's affidavit. Furthermore the affidavit does not state that it is made on affiant's personal knowledge, or that affiant is competent to testify as to the matters stated therein. These omissions render the affidavit ineffective in a summary judgment proceeding. Edwards v. Williams, Tex.Civ.App., 291 S.W.2d 783; Anderson v. Hake, Tex.Civ.App., 300 S.W.2d 663 (Syl. 3); Quarles v. State Bar of Texas, Tex.Civ.App., 316 S.W.2d 797 (Syl. 2). Appellant's third point is overruled.

In her fourth point, which is also presented as an alternative plea, appellant takes the position that the judgment of the trial court should be reformed so as to grant appellee a superior lien upon the refrigeration machinery only, excluding all other items, to the extent of the rental accruing during the current contract year.

We are unable to agree with appellant. As aforesaid the court's judgment does not award appellee a foreclosure on the tenant's office furniture. Nor does it award foreclosure on such detached movable articles as desks, chairs, tables, etc. The property on which foreclosure is awarded seems to us to come within and to be limited to the property described in Walton's affidavit and that

property comes within the provisions of Art. 5498, V.A.C.S. Appellant's fourth point is overruled.

The judgment of the trial court is affirmed.