**Penny JACOBS, Plaintiff,**

v.

**H. K. HUIE, Jr., d/b/a Huie Properties, Defendant.**

**Civ. A. No. CA–3–75–0345–G.**

United States District Court,
N. D. Texas,
Dallas Division.

April 27, 1976.

Dallas Legal Services Foundation, Inc. by Michael M. Daniel and Carol M. Barger, Dallas, Tex., for plaintiff.

William V. Counts, Lane, Savage, Counts & Winn, Dallas, Tex., for defendant.

John L. Hill, Atty. Gen., David M. Kendall, First Asst. Atty. Gen., Joe B. Dibrell by Marianne Wesson Cantrick, Asst. Attys. Gen., Austin, Tex., for intervenor.

## MEMORANDUM OPINION

PATRICK E. HIGGINBOTHAM, District Judge.

Penny Jacobs[1] has brought this suit against her former landlord seeking dam-

ages and a judicial determination that a statute of the State of Texas is constitutionally infirm. The case turns on the presence or absence of state action, a principle doomed to conceptual adolescence operating as it does, as an adjusting screw between state-federal sovereignties.

In November, 1974, Penny Jacobs executed a form lease for a one-bedroom, unfurnished apartment, at a monthly rental of $175.00 per month—one of over 300 units in an apartment complex. After falling into arrears in rental payments, Ms. Jacobs returned home on February 17, 1975, to learn that in her absence the apartment manager, accompanied by two assistants, had entered her apartment and removed certain pieces of personal property (Plaintiff's Exhibit 2).[2]

After moving from the apartment, Penny Jacobs instituted this suit, attempting to state a claim under 42 U.S.C. § 1983, and predicating jurisdiction upon 28 U.S.C. § 1343. Penny Jacobs argues that her landlord's entry and summary seizure of her personalty was an execution of a landlord's lien conferred by Art. 5236d V.A.T.S. Art. 5236d is the successor to the baggage lien law held unconstitutional in *Hall v. Garson*, 430 F.2d 430 (5th Cir. 1970) (Hall I) and 468 F.2d 845 (5th Cir. 1972) (Hall II).[3] It provides in pertinent part:

" . . Sec. 2. Notwithstanding any other statute to the contrary, there shall

---

**1.** At the outset Penny Jacobs sought to represent a "class" under Rule 23 F.R.C.P. The dimensions of the class were never defined. While Penny Jacobs attempted to abandon her class allegations before trial the court declined to allow the amendment, at least until evidence was heard. The evidence made clear that no class was before the court. There was no demonstration as to the size and scope of the class or that Penny Jacobs' claims were typical.

**2.** List of items held for rent due: 1 portable G.E. color T.V.; 1 chest of golden-hued flatware—24 pieces; 1 chafing dish and tray; 5 miscellaneous relish pieces; 1 food server with glass liner; 1 gravy bowl and platter; 2 3-piece tea sets and 2 trays; 1 chip and dip set; 1 water pitcher; 2 silver trays; 1 bread tray; and 1 butter dish.

**3.** Tex.Rev.Civ.Stat.Ann. Art. 5238a: "Art. 5238a. Baggage lien for rent.

Section 1. The operator of any residential house, apartment, duplex or other single or multi-family dwelling, shall have a lien upon all baggage and all other property found within the tenant's dwelling for all rents due and unpaid by the tenant thereof; and said operator shall have the right to take and retain possession of such baggage and other property until the amount of such unpaid rent is paid. Such baggage and other property shall be exempt from attachment or execution to the same extent as set out in Article 4594, Revised Civil Statutes of Texas, 1925, as amended, regulating baggage liens for hotels, boarding houses, rooming houses, inns, tourist courts and motels . . . Sec. 3. Notwithstanding any provisions to the contrary contained in Article 3840, Revised Civil

be exempt from the lien set out in Section 1 above, the following: (1) all wearing apparel, (2) all tools, apparatus and books belonging to any trade or profession, (3) school books, (4) one automobile and one truck, (5) family library and all family portraits and pictures, (6) household furniture to the extent of one couch, two living room chairs, dining table and chairs, (7) all beds and bedding, (8) all kitchen furniture and utensils, (9) all food and foodstuffs, (10) all medicine and other medical supplies, (11) all goods known by the landlord or his agent to belong to persons other than the tenant or other occupants of such dwelling, (12) all goods known by the landlord or his agent to be subject to a recorded chattel mortgage lien or financing agreement, and (13) all agricultural implements."

". . . Sec. 4. A contractual landlord's lien shall not be enforceable unless underlined or printed in conspicuous bold print in the rental agreement.

"Sec. 5. It shall be unlawful for any landlord or his agent to seize any property exempt under Section 2 above, under any circumstances. It shall be unlawful for a landlord or his agent to seize any property not exempt under Section 2 above, unless pursuant to the terms of a written rental agreement between the landlord and the tenant . . ."

 Central to Penny Jacobs' claim is that the seizure of her property was under "color of state law." In the language of *United States v. Classic,* 313 U.S. 299, 326, 61 S.Ct. 1031, 1043, 85 L.Ed. 1368 (1941), the exercise of prerogatives "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law, is state action taken 'under color of state law.'" See *Hall v. Garson,* 430 F.2d 430.

Although Article 5238a seemed on its face to fit the test of *United States v. Classic* in that it granted to a citizen the power to summarily seize, the Fifth Circuit, apparently concerned that a literalistic [4] reading portended an almost limitless concept of state action, approached the question in more abstract terms; at least it arguably did so.

In this case the alleged wrongful conduct was admittedly perpetuated by a person who was not an officer of the state or an official of any state agency. But the action taken, the entry into another's home and the seizure of another's property, was an act that possesses many, if not all, of the characteristics of an act of the state. The execution of a lien, whether a traditional security interest or a quasi writ of attachment or judgment lien has in Texas traditionally been the function of the sheriff or constable. Thus Art. 5238a vests in the landlord and his agents authority that is normally exercised by the state and historically has been a state function. 430 F.2d 430, 439.

Then, in *Hall II,* the court accented the role of the statute in the conferring of authority and placed less emphasis upon the nature of the contested conduct. Whether this represented any shift in analytical emphasis or was simply a shorter statement of the holding of *Hall I* was not clear. Arguably the circuit was requiring a two-step

---

Statutes of Texas, 1925, as amended, there shall be exempt from the lien set out in Section 1 of this Act, the following: (1) all wearing apparel and (2) all tools, apparatus and books belonging to any trade or profession. Additionally, the following shall be exempt from such lien when said house, duplex or apartment is occupied by a family, defined as a person and others whom he is under a legal or moral obligation to support: (1) one automobile and one truck, (2) family library and all family portraits and pictures, (3) household furniture to the extent of one couch, two living room chairs, dining table and chairs, all beds and bedding, and all kitchen furniture and utensils, (4) all agricultural implements, saddles, and bridles, and (5) goods subject to a recorded chattel mortgage lien or financing agreement . . . Sec. 5. Nothing contained herein shall prejudice any contractual agreements entered into by lessors and lessees concerning the subject matter of this article . . ."

4. If legislative approval alone were held to meet state action, a court decision would logically be equally sufficient. Thus, as an abstract proposition, all legal conduct would be conduct of the state.

inquiry in testing the presence of state action in seemingly private conduct. First, was there state authorization of the conduct. Second, was the authorized private action one traditionally done by the state.[5] A step-one inquiry alone would not provide a standard with any reasonable degree of predictability in result. Significantly, its logic would leave the distinction between private and state action only a dull line with occasional irrational separations, turning virtually on the legality *vel non* of the conduct. See n. 4, *supra*.

In 1973, the Texas legislature enacted Art. 5236d to replace Art. 5238a. The following year, a trilogy of cases reviewed the summary seizure tolerated by UCC Art. 9 § 503 in Mississippi, Alabama and Texas. *James v. Pinnix,* 495 F.2d 206 (5th Cir. 1974); *Brantley v. Union Bank & Trust Co.,* 498 F.2d 365 (5th Cir. 1974); *Calderon v. United Furniture Co.,* 505 F.2d 950 (5th Cir. 1974). UCC Art. 9 § 503 provides in relevant part:

"Unless otherwise agreed, a secured party has on default the right to take possession of the collateral. In taking possession, a secured party may proceed without judicial process if this can be done without breach of the peace or may proceed by action."

In *James, Hall v. Garson* was distinguished as involving: (i) ". . . a function traditionally performed by the sheriff or other state agent . . .", *James v. Pinnix, supra,* at 208; (ii) entry into a home; and (iii) a general lien and not a security interest in specific goods. Finally, *James* rejected the arguments that state regulation so pervaded the field as to constitute state action. *Moose Lodge No. 107 v. Irvis,* 407 U.S. 163, 92 S.Ct. 1965, 32 L.Ed.2d 627 (1972) and *Reitman v. Mulkey,* 387 U.S. 369, 87 S.Ct. 1627, 18 L.Ed.2d 830 (1966) were found inapposite because they involved virtually *malum in se* conduct—ra-

cial discrimination. *Calderon* held that despite the fact that the self-help involved entry into a home (and presumably carrying with it the same heavy indicium of a state function found in *Hall*) because there was a specific security interest involved, there was no state action.

The court did not articulate why the existence of a specific security interest should be determinative. While a creditor's ownership of property interests in specific property is pertinent in weighing the adequacy of the procedures preceding a seizure (see *Mitchell v. W. T. Grant Co.,* 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974) ), its relevance to state involvement in the seizure is not clear. The Ninth Circuit has recently suggested, also without citation, that execution of a specific, as distinguished from a general, lien was "traditionally" left to private hands. *Culbertson v. Leland,* 528 F.2d 426 (9th Cir. 1975). But it is far from certain that *Culbertson* holds more than that execution of a lien upon unspecified property, unlike repossession, *ought* to be exercised by state officials. This appears to be a shift from using the result of the inquiry as to whether the conduct was traditionally exercised by the state as evidence of whether state action was involved. Obviously, what ought to be (in the judgment of the court) and what was may be different.

It is upon the efforts of the Fifth Circuit in *James* to distinguish *Hall* that Penny Jacobs bottoms her attack. She points out that the lien in issue is not specific and the seizure was from her home. But *Calderon* does not in its implication of a public function dictate that all executions of a general lien involve state action. Delegation of a public function to a private citizen or tolerance of private performance of a public function is indicative but not determinative of the existence of state action.[6] In all

---

5. This is referred to by some circuits as the "public function" theory. See *Anastasia v. Cosmopolitan National Bank,* 527 F.2d 150, 154 (7th Cir. 1975).

6. Under Texas law a contractual lien for rent due, if properly perfected, has the status of a "chattel mortgage." *Thomas v. Gulfway,* D.C., 320 F.Supp. 756 at 766. "The contractual landlord's lien, unlike either the statutory lien or common law lien of distress for rent, is wholly

cases where an application of the public function test resulted in state action, the state was at least neutral in its manifested policy toward the contested conduct. Under Art. 5236d, the state is not neutral toward the summary seizure of a tenant's property. Such self-help is forbidden unless ". . . pursuant to the terms of a written rental agreement . . ."

Ironically, the statute attacked here by the plaintiff not only did not sanction the summary seizure of property in issue, it forbade it. The lease relied upon by the defendant at best created a contractual lien. It nowhere allowed the defendant to enter the tenant's premises to execute its lien. While a right to enter a home and seize property should not be lightly inferred (see *Gonzalez v. County of Hidalgo,* 489 F.2d 1043 (5th Cir. 1973)), it is unnecessary here to resort to rules of construction. The lease makes no mention of a right of entry. Art. 5236d allows no seizure not agreed to.

The statute thus by its own terms contemplates only seizures by private citizens pursuant to their own understandings. Art. 5236d does not clothe anyone with authority of state law; to the contrary, state authority is stripped from the landlord. Texas has not, Pilate like, attempted to attain a role of neutrality but has expressed instead its support of the tenant.

If a landlord seizes without a prior agreement,[7] he violates state law. If he seizes pursuant to a valid agreement, the seizure finds no state support except in the sense that its courts will recognize private agreements and tolerate a waiver of constitutional rights where the requisite safeguards are met. See *Johnson v. Zersbt,* 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938).

For the foregoing reasons judgment in favor of defendant and against plaintiff

will be entered. Each party will bear his own costs.

---

consensual—existing solely by force of the intention of the contracting parties." *Id.* 764. See also *Shwiff v. City of Dallas,* 327 S.W.2d 598 (Tex.Civ.App. Dall. 1959). Thus the only enforceable lien contemplated by the present lien statute is one already existing under the case law of Texas.

7. In *Culbertson,* the Ninth Circuit emphasized that ". . . Nothing in the dealings of the parties permits the conclusion that appellants agreed or consented in advance to the seizure, either explicitly or by implication . . .", 528 F.2d 426, 432.