George W. Eason, Trustee, v. Garrison & Kelly.

Decided October 17, 1904.

1.—Lien Reserved on Personal Property—Failure to Record.

The failure to record a lien reserved to secure the purchase price of personal property and the failure to enforce the rights in the property for more than two years after date of the lien, do not affect the lien as between the original parties, article 2547, Revised Statutes, applying to loans of chattels only.

2.—Creditors—Meaning—Statute Construed.

The word "creditor," as used in article 3328, Revised Statutes, declaring unrecorded chattel mortgages to be void as against creditors and bona fide purchasers for value, means one having some sort of lien fixed by law upon the particular property, and does not include a mere general creditor.

3.—Bankruptcy—Preferred Creditors—Sale by Insolvent—Discharge of Lien.

Defendants sold to a firm a complete sawmill outfit and reserved a vendor's lien to secure the purchase price. Less than four months before the institution of bankruptcy proceedings it became generally known that the firm was insolvent, and a meeting of the general creditors was held, at which it was agreed that the firm should sell what lumber they had on hand to defray further running expenses. This was accordingly done, defendants being the purchasers, reserving the amount still due on their lien and paying the balance in cash with the understanding that it should be used in paying labor claims then due. The incumbered property was released, the price paid for the lumber was adequate and the value of the estate was not impaired. Held, that there was no fraud in the transaction and the trustee in bankruptcy can not recover, for the benefit of other creditors, the value of the property sold.

Appeal from the District Court of Nacogdoches. Tried below before Hon. Tom C. Davis.

*Mims & King,* for appellant.

*Blount & Garrison,* for appellees.

GILL, Associate Justice—In the summer of 1900 Garrison & Kelly sold to the firm of Lightfoot & Walden a complete sawmill outfit and fixtures situated at that time near Garrison, Texas.

The consideration for the sale was $1400, for which the purchasers executed their note to the vendors, a lien being retained in the note upon the property so sold to secure the payment of the sum due.

It was also provided therein that the lien should attach to all additional improvements that might be added. No evidence of this lien was ever placed of record.

During the fall of the year 1901 Lightfoot & Walden, with the consent of the vendors, removed their outfit to a point near the town of Appleby, in Nacogdoches County, and the property remained at that point, the firm operating the sawmill until they were placed in bankruptcy as hereinafter shown.

During the year 1902 Lightfoot & Walden, with the consent of Garrison & Kelly, sold the engine covered by the lien and bought a new one in its stead, using the proceeds of the old in part payment for the new, it being then orally understood and agreed between the parties that the lien should cover the new engine and boiler as it had the old.

Lightfoot & Walden reduced the $1400 note by payments so that only $865 was due thereon December 3, 1902.

Some time prior to the last named date it became generally known that the firm was insolvent. At a meeting of their creditors held about this time, at which Garrison & Kelly were not present, it was agreed that the firm should continue to operate the mill, selling such lumber and other products of the mill as they had on hand to defray the expenses of its further operation. Thereafter on December 3, 1902, Lightfoot & Walden sold to Garrison & Kelly 250,220 feet of lumber and cross-ties, being all the property owned by them except their sawmill, oxen, wagons, etc. The consideration for this sale was $1557.92, and it is not questioned that this was a fair and adequate price.

Of this sum $865 was retained by Garrison & Kelly in discharge of their debt and lien, and the lien on the engine, mill and fixtures was released. The remainder, $692.82, was paid to the concern in cash upon the agreement that it should be used to pay off labor claims then accrued and due. This sum was actually used in the settlement of labor claims and purchase of feed for the oxen used in operating the mill.

On the 28th of January, 1903, a petition in bankruptcy was filed against Lightfoot & Walden, and they were adjudged to be bankrupt cn February 2, 1903.

Eason, who was appointed trustee in bankruptcy, took charge of all the property upon which Garrison & Kelly theretofore had a lien, and thereafter sold it for the benefit of the creditors of the estate.

The general creditors received from the bankrupt estate about 15 per cent of their claims. It does not appear that any of them were lien creditors. It does not appear what the property covered by the lien brought at a trustee's sale, but it was thereafter sold for $2000. This is the same property that was released by Garrison & Kelly when their debt of $865 was paid.

The trustee brought this suit to recover of Garrison & Kelly the value of the lumber and ties bought by them, the value alleged being the price paid by them. The recovery was sought on the theory that as the sale was made less than four months before the bankruptcy proceedings the preference thereby secured was in fraud of the bankruptcy laws and the other creditors.

The defendants pleaded their debt and lien and the facts above set out in bar of the action. On a trial before the court without a jury judgment was rendered for defendants and the trustee has appealed.

The first proposition urged by appellant as a ground for reversal is that the failure to record the lien and failure to enforce their rights in the property for more than two years after the date of their lien brought the claim of defendants within article 2547 of the Revised Statutes. The article cited applied to loans of chattels exclusively and has no bearing upon liens reserved. Templeman v. Gibbs, 86 Texas, 358. Mere indefinite indulgence and delay in the collection of a dishonored note is not a badge of fraud. Banner v. Robinson, 34 S. W. Rep., 355.

We shall not discuss further in detail the various assignments of appellant, but will dispose of them in a general way by stating what in our opinion are the rules of law governing the case on the undisputed facts.

It will be borne in mind that none of the creditors represented by the trustee were either lien or judgment creditors. The following propositions of law seem to be well settled:

The trustee in bankruptcy can enforce no greater rights than are held by the bankrupt and creditors he represents. Brand. on Bankr., secs. 1082, 1083.

Liens and the rights of the parties thereto will be construed in bankruptcy proceedings with reference to the laws of the State where the proceeding is pending and the liens created. Brand. on Bankr., secs. 1079, 1097.

In this State the word "creditor," as used in the statute declaring unrecorded chattel mortgages to be void as against creditors and bona fide purchasers for value, means "creditors" having some sort of lien fixed by law or legal proceedings upon the particular property and does not include a mere general creditor. The word "purchasers" includes mortgagees for value. Bowen v. Lansing Wagon Works, 91 Texas, 385, construing article 3328 of the Revised Statutes.

A lien acquired without fraud, for a valuable consideration, valid as against the bankrupt and antedating by four months the bankruptcy proceedings, is good as against general creditors represented by the trustee whether recorded or not.

The trustee takes property of the bankrupt subject to all liens legal or equitable, and can not take a title greater than the bankrupt's nor enforce greater rights than were held by the creditors he represents. Brand. on Bankr., sec. 1075.

The application of this rule may be modified by the presence of fraud between the bankrupt and the creditor or other person concerned therein.

A personal claim against a bankrupt's estate does not constitute a lien. Brand. on Bankr., sec. 1078.

The law does not forbid an insolvent from dealing with his property prior to the institution of bankruptcy proceedings, provided it is done with no purpose to defraud or give preference and the value of the estate is not impaired. Brand. on Bankr., secs. 1105, 1106.

Therefore a bona fide sale for fair value or in the discharge of a valid lien made prior to the institution of bankruptcy proceedings can not be annulled by the trustee, and the property sold is no part of the bankrupt's estate. Hall v. Keating Imp. Co., 77 S. W. Rep., 1054.

In order to set aside a sale by the insolvent the burden is on the trustee to show fraud. Brand. on Bankr., sec. 1107.

In support of these propositions we think it necessary to cite only such State authorities as establish the propositions as to the validity of the lien as against the bankrupt and general creditors, and Mr. Branden-

burg's work on Bankruptcy, in which the propositions are amply supported by cited cases.

If these propositions are sound the facts undoubtedly authorize the affirmance of the judgment. In the first place there can be no question that the lien retained in the note was valid against Lightfoot & Walden notwithstanding the failure of defendants· to place the instrument of record. It is equally clear that it covered the new machinery purchased in part by the old.

There is no proof that defendants withheld the instrument from record for any fraudulent purpose. Therefore as against general creditors unsecured by liens defendants' mortgage would have been enforcible against the property in any court of competent jurisdiction.

Instead of enforcing their lien they accepted other property at a fair value in discharge of their debt. By this transaction the value of the estate was not impaired, for the incumbered property was released to the creditors, and it is not pretended by appellants that its value was insufficient to have discharged defendant's debt. The creditors represented by the trustee have suffered no injury and so he can not be heard to complain.

The same is true of the lumber and ties paid for in cash. Defendants knew of the agreement among the creditors that the firm should continue to operate the mill and that property should be sold to pay operating expenses. They took the precaution to procure a promise from the insolvents that they should use it only in payment of preferred claims, and it was in fact used for that purpose and to feed the live stock which the trustee subsequently sold for the creditors' benefit. So here again the value of the estate was not impaired nor did the creditors suffer any injury. The transaction did not constitute a preference in effect, nor was it so intended.

Nothing in the bankruptcy act forbids the transaction if fairly and honestly made, and it appears to have been so done.

We find no error in the judgment. It is therefore affirmed.

*Affirmed.*