274

Prentiss DOUGLASS, Trustee in Bankruptcy of the Commercial Plumbing & Heating Co., Inc., Plaintiff,

v.

Carrie D. PUGH, Defendant.

No. 1289.

United States District Court
E. D. Kentucky.

Oct. 12, 1959.

Edward F. Prichard, Jr., Lexington, Ky., for plaintiff.

Paul Mansfield, Lexington, Ky., for defendant.

HIRAM CHURCH FORD, Chief Judge.

On September 30, 1957, upon an involuntary petition in bankruptcy filed by certain of its creditors, Commercial Plumbing & Heating Company, Inc., was adjudged a bankrupt by this court.

By this plenary action the trustee in bankruptcy seeks to avoid as preferences and to recover from the defendant, Carrie D. Pugh, payments in the total sum of $8,850 received by defendant out of general corporate funds of the bankrupt some two weeks prior to bankruptcy and a few days before the company ceased to do business on September 19, 1957. The payments were made by the bankrupt to defendant, its acting Secretary-Treasurer, in satisfaction of a note evidencing a personal loan in the amount of $8,850.-70 which defendant had made to the bankrupt August 30, 1957, one month prior to bankruptcy.

The defendant, Mrs. Pugh, was employed as bookkeeper by the bankrupt from November 1956 until it ceased to do business. Sometime after August 1, 1957, following the dismissal of a foreman named Greer, who had theretofore countersigned checks drawn on the corporation, defendant was given authority to sign and countersign checks as "Secretary-Treasurer."

By the end of August 1957, the credit of the corporation had become impaired, and funds were needed to meet the pay-

roll and to pay suppliers of materials to various jobs on which the corporation was subcontractor. The corporation was engaged as subcontractor under a prime contractor named Fox & Lewis in installing plumbing fixtures in several schools in Bourbon County, Kentucky. The president of the corporation, Archie J. Henkenberns induced the defendant, Mrs. Pugh, to use her personal credit to borrow money for the use of the corporation and in return therefor agreed to assign to her estimates in the approximate amount of $8,850.70 purporting to represent money due for work completed for Fox & Lewis.

On August 30, 1957, the defendant borrowed $8,850.70 from the Bank of Commerce, Lexington, Kentucky and gave the bank her personal note for that amount. The note, which was due and payable 15 days after date, contains the following notation on its face: "Assignment of Accounts Fox & Lewis General Contractors for $8850.70," deposited as collateral security for payment of the note.

On the same date the bankrupt executed to defendant its note in the amount of $8,850.70 signed by A. J. Henkenberns, President. Henkenberns testified that the estimates of money due for work completed for Fox & Lewis were orally assigned to defendant to secure payment of the latter note. Thereupon, the money which defendant had borrowed from the bank was used to meet the payroll and current expenses of the corporation.

On or about September 10, 1957, Fox & Lewis refused to make payment on the estimates in question on the ground that Greer, the foreman who had been dismissed, had padded previous estimates and no further sums for work completed were due. No money was ever collected from Fox & Lewis on these estimates. The trustee testified he had investigated the matter and found no money was due from Fox & Lewis.

Defendant was paid on the note of the corporation held by her $7,000 on September 11, 1957, $646.71 on September 13, 1957, and $246.12 and $1,000 on September 14, 1957. She immediately applied these sums in satisfaction of her personal note to the bank, which was due on September 14, 1957.

All the payments received by defendant were by checks drawn on the corporation payable to her except the final payment of $1,000, which was by a check payable to the corporation and endorsed to defendant. All such payments to defendant were out of general funds of the corporation.

Prior to the filing of the involuntary petition in bankruptcy against the corporation, the defendant Mrs. Pugh assisted Mr. Henkenberns, the president, in making a list of its accounts payable and accounts receivable, which is filed herein as Exhibit No. 1, and the attorney to whom it was submitted recommended that the corporation go into voluntary bankruptcy.

Due to the fact that the corporation ceased to do business on September 19, 1957, it did not fulfill its subcontract with Fox & Lewis.

The court has jurisdiction of the parties and the subject matter of this action.

Section 60 of the Bankruptcy Act, Title 11 U.S.C.A. § 96, provides:

"(a) (1) A preference is a transfer, as defined in this title, of any of the property of a debtor to or for the benefit of a creditor for or on account of an antecedent debt, made or suffered by such debtor while insolvent and within four months before the filing by or against him of the petition initiating a proceeding under this title, the effect of which transfer will be to enable such creditor to obtain a greater percentage of his debt than some other creditor of the same class.

"(2) For the purposes of subdivisions (a) and (b) of this section, a transfer of property other than real property shall be deemed to have been made or suffered at the time when it became so far perfected that no subsequent lien upon such property obtainable by legal or equi-

table proceedings on a simple contract could become superior to the rights of the transferee. * * * If * * * any transfer of other property is not so perfected against such liens by legal or equitable proceedings prior to the filing of a petition initiating a proceeding under this title, it shall be deemed to have been made immediately before the filing of the petition.

\* \* \* \* \* \*

"(b) Any such preference may be avoided by the trustee if the creditor receiving it or to be benefited thereby or his agent acting with reference thereto has, at the time when the transfer is made, reasonable cause to believe that the debtor is insolvent. Where the preference is voidable, the trustee may recover the property or, if it has been converted, its value from any person who has received or converted such property, except a bona-fide purchaser from or lienor of the debtor's transferee for a present fair equivalent value: * * * For the purpose of any recovery or avoidance under this section, where plenary proceedings are necessary, any State court which would have had jurisdiction if bankruptcy had not intervened and any court of bankruptcy shall have concurrent jurisdiction."

It is argued on behalf of defendant that the assignment by the bankrupt to the defendant of payments alleged to be due from Fox & Lewis to secure defendant's note and the payments received by her in satisfaction of the note did not constitute a preference to the defendant. Authorities relied upon hold that where the security is of equal value with the note secured, the payment of the note constitutes merely an exchange of property of equal value and does not constitute the payment of an antecedent debt since it does not deplete the estate of the bankrupt. The authorities relied upon have no application to the present case since there is no showing here that the property assigned as security was of any value whatever, and the payment of the note was not derived from the alleged security.

It seems quite clear from the evidence that the payments to the defendant out of general corporate funds of the bankrupt depleted the bankrupt estate to the full extent thereof and the obvious effect of such payments was to give the defendant a greater percentage of her claim against the bankrupt than other creditors of the same class will receive. Such diminution of the bankrupt estate constitutes a primary test as to whether there has been a preference within the meaning of the Bankruptcy Act. Continental & Commercial Trust & Savings Bank v. Chicago Title & Trust Co., 229 U.S. 435, 444, 33 S.Ct. 829, 57 L.Ed. 1268; Remington on Bankruptcy, Vol. 4, page 371, § 1713.

Under section 60, sub. b, of the Bankruptcy Act, the trustee may recover the property involved in such preference or its value if the creditor receiving it had reasonable cause to believe that when the transfer was made the debtor was insolvent.

It is difficult to imagine anyone in a better position to know the financial condition of the bankrupt than defendant who was its bookkeeper and acting Secretary-Treasurer. When she loaned the money to the bankrupt, as well as when she received payment of the loan, she obviously had sufficient knowledge of the financial condition of the corporation to constitute reasonable cause to believe it was insolvent. She admitted in her testimony that she helped prepare portions of defendant's Exhibit No. 1. According to the testimony of the trustee, the liabilities of the bankrupt were in excess of $100,000 at the time of the filing of the involuntary petition against it, which was far in excess of its assets.

In view of the facts and circumstances disclosed by the evidence, the conclusion seems inescapable that at the time of the transfer of the funds to her in payment of her note, defendant had reasonable cause to believe that the bank-

rupt was insolvent, and the transfer of the money from the general funds of the bankrupt estate constituted a voidable preference under Section 60 of the Bankruptcy Act.

For the reasons indicated, plaintiff is entitled to recover from defendant the sum of $8,850 and the costs herein. Let judgment be entered accordingly.