**Harold A. THOMAS, Trustee in Bankruptcy of the Estate of Francine's, Inc., Bankrupt,**

v.

**GULFWAY SHOPPING CENTER, INC.**

**Civ. A. No. 66–C–118.**

United States District Court,
S. D. Texas,
Corpus Christi Division.

April 7, 1970.

R. Briscoe King, Charles R. Porter, Jr., Corpus Christi, Tex., for plaintiff.

Lev Hunt and Harvey Weil of Kleberg, Mobley, Lockett & Weil, Corpus Christi, Tex., for defendant.

## MEMORANDUM OPINION AND ORDER

SEALS, District Judge.

The plaintiff, as Trustee in Bankruptcy of the Estate of Francine's, Inc., brought this suit to avoid a preference under section 60 of the Bankruptcy Act, 11 U.S.C. § 96, and to recover from the defendant Gulfway Shopping Center, Inc. certain specified property that was transferred to this defendant by Francine's, Inc. within four months prior to the filing against Francine's of the petition initiating the Bankruptcy proceeding.

The defendant in this proceeding, as landlord, leased its building at 6020 Lexington Boulevard, Corpus Christi, Texas to Francine's, Inc. for five years, said term commencing on January 15, 1965 and ending on January 14, 1970. Francine's Inc. was to operate in the leased premises a ladies' ready-to-wear specialty clothing store. To secure the payment of all rentals or other sums due under the terms of the lease, Francine's, Inc. granted defendant Gulfway Shopping Center an express contract lien, in addition to the Statutory Landlord's Lien, upon all the fixtures, goods, and other property then or thereafter placed in or upon the leased premises. The lease

was properly recorded as a chattel mortgage, both as to personal property and as to fixtures attached to realty, more than four months prior to bankruptcy.

On about Wednesday, January 5, 1966, Mrs. Frances Hamby, President of Francine's, Inc., came to Corpus Christi from Beaumont and informed Mr. James D. Peterson, Vice-President of Gulfway Shopping Center, Inc., that Francine's, Inc. had not met the owners' profit expectations and that they were considering closing the store. Mr. Peterson suggested that Mrs. Hamby make certain advertising changes and offered to speak to Mr. Ray E. Peterson, owner of the defendant corporation, about a reduction in the rent of the leased premises, but Mrs. Hamby stated that a reduction in rent would not alleviate the corporation's financial problems. Francine's, Inc. conducted a one-half price sale on Friday and Saturday, January 7 & 8, 1966.

On the following Monday, January 10, 1966, Francine's, Inc. did not open its doors for business.

The evidence reflects that all wages and taxes were paid current when the business operations of Francine's terminated. The current rent had been paid to or through January 15, 1966. The last monthly rental installment due under the lease had been prepaid at the commencement of the lease.

Representatives of Francine's, Inc. and of Gulfway Shopping Center initiated negotiations for the cancellation of the lease. The negotiations culminated in a written document (defendant's exhibit 1), executed by Mrs. Hamby on February 8, 1966 and by the president of Gulfway on March 14, 1966, wherein it is stated that Francine's, Inc. agreed to convey to defendant all of the inventory and fixtures in the leased premises and $1,000 in cash, in consideration for which defendant agreed to cancel the lease agreement and all obligations of Francine's, Inc. thereunder. On February 1, 1966, defendant mailed a notice of this transfer of inventory to all creditors of Francine's, Inc. The provisions of the Texas Bulk Sales law were fully complied with by both parties.

Out of state creditors filed an involuntary petition in bankruptcy against Francine's, Inc. on May 20, 1966. On September 23, 1966, the Trustee in Bankruptcy mailed a letter to defendant, claiming that the transfer to be a voidable preference and demanding payment of $13,946.27, which was the Bankrupt's book value for the inventory, built-in fixtures and cash. The Trustee instituted this suit on December 6, 1966.

In the pre-trial order entered in this cause, the parties made the following admissions of fact:

1. The plaintiff is the duly appointed, qualified and acting Trustee in Bankruptcy of the Estate of Francine's, Inc., a Bankrupt;

2. The proceeding before the court is a proceeding to avoid a preference, and the court has jurisdiction;

3. The plaintiff, on September 23, 1966, duly demanded of defendant the payment of the preferential payments, and defendant has not complied with this demand;

4. The property alleged in the Original Complaint to have been transferred to defendant was in fact so transferred;

5. Francine's, Inc., Lessee, and Gulfway Shopping Center, Inc., Lessor, were in a landlord-tenant relationship at the time of the transfer in question;

6. The transfer in question occurred within four months of the filing of the Petition in Bankruptcy;

7. The lease agreement between Francine's Inc. and Gulfway Shopping Center, Inc. was recorded in the chattel mortgage records more than four months prior to the filing of an Involuntary Petition in Bankruptcy, and was indexed both as a chattel mortgage on personalty and as a chattel mortgage on fixtures affixed to realty; and

8. The provisions of the Texas Bulk Sales law, Vernon's Ann.Tex.Rev.Civ. Stat. Art. 4001, were fully complied with by Gulfway and Francine's relative to the transfer made the basis of this suit.

■ In a general sense, the transfer made the basis of this suit did constitute a perference—the defendant received a preferred payment, or transfer of the debtor's property, while other creditors received little or nothing. But a preferential transfer, absent additional considerations which compel a different result, are upheld at common law as a perfectly legitimate manner in which to conduct one's affairs. See, e. g., Canright v. General Fin. Corp., 35 F.Supp. 841 (E.D.Ill.1940); Abeken v. United States, 26 F.Supp. 170 (D.C.Mo.1939); 3 Collier, Bankruptcy Par. 60.02, .03 (14th ed. 1964); Seligson, Preferences Under the Bankruptcy Act, 15 Vand.L. Rev. 115 (1961).

> At common law a preferential transfer was not considered immoral or improper. Courts of equity, as well as courts of law, allowed a debtor to prefer one creditor over another if the transfer was designed to pay or secure an honest debt. The debtor had the unquestioned right 'to confess a judgment in favor of a particular creditor, for an honest debt then due,' and the right of such judgment to hold its priority could not be challenged.

> Seligson, *supra*, at 115.

Thus, only when a preference is legislatively proscribed may it be invalidated simply because it is a preference, without more. 3 Collier, Bankruptcy Par. 60.02 at 755 n. 3 (14th ed. 1964).

The plaintiff has not proved fraud, deceit, or any other element that would render the transfer to defendant invalid under the common law. Hence the remaining inquiry is whether the transfer constituted a legislatively proscribed preference.

As authority for his assertion that the instant transfer has been declared legislatively to be an avoidable preferential transfer, plaintiff relies upon § 60 of the Bankruptcy Act, 11 U.S.C. § 96. The elements of a preference, as that term is used in § 60 of the Bankruptcy Act, are set out in subdivision (a) (1)

of that section, 11 U.S.C. § 96(a) (1). To constitute such a preference there must be (1) a transfer of the debtor's property, (2) to or for the benefit of a creditor, (3) for or on account of an antecedent debt, (4) made within four months before the filing by or against him of the petition in bankruptcy, and (5) the effect of which transfer enables such creditor to obtain a greater percentage of his debt than some other creditor of the same class.

Section 60(b), 11 U.S.C. § 96(b), sets forth the conditions under and extent to which such a § 60(a) (1) preference may be avoided. Before a Trustee in Bankruptcy may avoid a § 60(a) (1) preference, section 60(b) requires that the creditor receiving the transfer or to be benefited thereby or his agent, must have had reasonable cause at the time the transfer was made to believe that the debtor was insolvent.

■■ The absence of any one of the requisite elements set forth in § 60(a) (1) precludes a finding of a Bankruptcy Act "preference" and, despite the presence of all the requisite elements set forth in § 60(a) (1), the absence of any requisite condition under § 60(b) negates the existence of a preference that is voidable by the Act. Bumb v. Valley Electric Co., 419 F.2d 107 (9th Cir. 1969); 3 Collier, Bankruptcy Par. 60.36, at pg. 874 (14th ed. 1964); 4 Remington on Bankruptcy § 1657, at pg. 197. The law places the burden of establishing each of these elements in § 60(a) (1) and (b) squarely upon the shoulders of the Trustee. Bumb v. Valley Electric Co., *supra*; Aulick v. Largent, 295 F.2d 41 (4th Cir.1961); Moran Bros. Inc. v. Yinger, 323 F.2d 699 (10th Cir.1963); 3 Collier, Bankruptcy, Par. 60.62 (14th ed. 1964). The trustee must overcome by satisfactory proof a presumption that arises in support of the validity of the transfer. 3 Collier, *supra*, at pp. 1123–1127.

In support of its position that the transfer made the basis of this suit was not a preferential transfer made voida-

ble by the Bankruptcy Act, defendant urges that defendant had, in addition to a statutory landlord's lien, a valid chattel mortgage on the inventory and fixtures of the bankrupt which was recorded more than four months prior to bankruptcy, so that the defendant's taking possession of such inventory and fixtures in consideration for the cancellation of this lien was proper. Defendant bases its claim of a valid and enforceable chattel mortgage on a provision in the original lease agreement wherein Francine's granted the defendant "an express contract lien, in addition to the Statutory Landlord's Lien, upon any and all fixtures, goods, and other property of any kind or character * * * placed in or upon [the] premises, to secure the payment of all rentals or other sums due under terms of [the] lease."

As admitted by plaintiff in the pretrial order, the lease agreement was recorded in the chattel mortgage records in the office of the County Clerk of the county in which the property was situated more than four months prior to the filing of the Involuntary Petition in Bankruptcy, and was indexed both as a chattel mortgage on personalty and as a chattel mortgage on fixtures affixed to realty as required by Tex.Rev.Civ.Stat. Ann. Arts. 5490 and 5498.

Defendant's contractual and statutory liens properly perfected, were valid and enforceable in whole against the Trustee, unless subordinated or rendered voidable by some provision in the Bankruptcy Act. See Diana Compania Maritima, etc. v. Subfreights, 280 F. Supp. 607, 613 (S.D.N.Y.1968); In re Rivet, 299 F.Supp. 374 (D.C.Mich.1969);

In re Continental Midway Corp., 185 F. Supp. 867 (D.C.Md.1960); Zartman v. First Nat'l Bank, 216 U.S. 134, 138, 30 S.Ct. 368, 54 L.Ed. 418 (1910); Lockhart v. Garden City Bank & Trust Co., 116 F.2d 658, 661 (2d Cir.1940); Matter of Empire Granite Co., 42 F.Supp. 450 (M.D.Ga.1942); Jefferson Standard Life Ins. Co. v. United States, 247 F.2d 777 (9th Cir.1957); 3A Colliers, Bankruptcy Par. 64.02 (14th ed.).

Assets of the bankrupt in the trustee's hands are subject to all of the equities, liens and incumbrances in favor of third persons that exist at the date of bankruptcy and are not invalidated by the terms of the Act. Thus liens which arose before bankruptcy and which are not invalidated by or under the terms of §§ 60, 67 or 70c, e, will be recognized as a charge upon the bankrupt's assets * * *. These liens * * * must be satisfied in full before any payment of dividends to unsecured creditors or on administrative expenses can be made. * * *

Collier, *supra*, at 2065.

In the agreement dated March 14, 1966, transferring the $1,000 in cash, inventory and fixtures to defendant, Francine's again recognized that Gulfway had a statutory landlord's lien, as well as an express contract lien which had been recorded as a chattel mortgage, upon all of Francine's property of any kind or character upon the leased premises. Francine's, Inc., in the same agreement of March 14, 1966, consented to the foreclosure of these liens by Gulfway in considerations of the discharge by defendant of Francine's, Inc.'s lease obligations.[1]

---

1. The court feels confident that as part of the agreement of March 14, 1966, defendant's liens, as well as the bankrupt's lease obligations, were cancelled. In the agreement that Francine's, Inc. consented to the foreclosure by the defendant of its liens on Francine's property, the parties mutually consented to the cancellation of *"all rights, privileges, duties and obligations"* of the parties to the lease contract, and they declared the lease agreement to be "void and of no further effect." The last paragraph of the cancellation agreement did state that "[n]othing herein contained shall be construed as a release by Gulfway of its liens against all property in the leased premises, or of Gulfway's priority thereof over other creditors, or of Francine's indebtedness in support of said liens, in the event of any contest or litigation with, or by, or against any other creditor of Francine's." The plain language of this paragraph, when considered with the

■■ Assuming for the moment that one or more of defendant's liens had not been invalidated or subordinated by the Bankruptcy Act, the transfer by Francine's of its assets as consideration for the satisfaction and cancellation of such liens on its property would not constitute a preference under the Act. *E. g.,* August v. Aldan Rubber Co., 277 F. Supp. 652 (D.C.Pa.1967); Sloan v. Garrett, 277 F.Supp. 235 (D.C.S.C.1967); Mattes v. American Acc. Corp., 204 F. Supp. 26 (D.C.Pa.1962); Douglass v. Pugh, 177 F.Supp. 274 (E.D.Ky.1959), aff'd, 6 Cir., 287 F.2d 500; Public Nat. Bank & Trust Co. v. Fortinberry, 53 S. W.2d 113 (Tex.Civ.App.); Eason v. Garrison, 36 Tex.Civ.App. 574, 82 S.W. 800; 3 Collier, Bankruptcy Par. 60.22 (14th ed. 1964) and cases cited therein. The essence of a preference is that it depletes or diminishes the bankrupt's estate that is available to remaining creditors. Thus when a transfer neither depletes nor diminishes the estate that would otherwise be available for distribution to other creditors in a subsequent bankruptcy proceeding, no preferential transfer is considered to have occurred. In the case of property being transferred for the cancellation of a lien which has not been invalidated or subordinated by the Act, so long as the value of the property subject to the lien at least equals the value of the property transferred [See, Dinkelspiel v. Weaver, 116 F.Supp. 455 (W.D.Ark.1953); 3 Collier, Bankruptcy Par. 60.22 (14 ed. 1964)] and so long as the value of the property transferred does not exceed the value of the lien being surrendered [see, Collier, Bankruptcy Par. 60.22 at 870–871 (14th ed. 1964); Waring v. Buchanan, Fed.Cas.No.17,176 (D.C.N.Y.); Douglass v. Pugh, 177 F.Supp. 274 (E.D.Ky. 1959), aff'd 6 Cir., 287 F.2d 500 (6th Cir.1961)] no preferential transfer occurs for the assets available for other creditors are not being diminished. In such circumstances the bankrupt's assets were already encumbered by the creditor-transferee's enforceable lien which was of a value at least as great as the amount being transferred. See, *e.g.,* Virginia Nat'l Bank v. Woodson, 329 F. 2d 836 (4th Cir.1964); Aulick v. Largent, 295 F.2d 41 (4th Cir.1961); Grubb v. General Contract Purchase Corp., 94 F.2d 70 (2d Cir.1938); In re Perpall, 271 F. 466 (2d Cir.1921); Collier, Bankruptcy Par. 60.22 (14th ed. 1964); 4 Remington, Bankruptcy Law (rev. ed. 1957).

At least one, and possibly two of the essential elements comprising the definition of a § 60 preference are absent when the estate has not been so diminished or depleted.

Some authority suggests that no "transfer," within the meaning of § 60(a) (1) has been made. *See,* Collier, Bankruptcy Par. 60.07 at 790–791 (14th ed. 1964). Although section 1(30) of the Act defines "transfer" sweepingly as including "the sale and every other and different mode * * * of disposing of or of parting with property or with an interest therein or with the possession thereof," the requirement that there be a transfer of the debtor's property has been judicially construed to require additionally that such transfer result in the depletion of the debtor's estate. See, *e.g.,* Matter of Kentucky Book Mfg. Co., 30 F.Supp. 400 (W.D.Ky.1939).

The failure of such an exchange (of a debtor's property in consideration for the cancellation of a lien not invalidated

foregoing agreements of the parties, makes it abundantly clear that its only intended effect was to insure that in the event the cancellation agreement were for some reason rendered unenforceable (by a subsequent bankruptcy proceedings, or otherwise) then defendant would not be considered to have waived its rights under the previously existing liens (*e. g.,* priority in distribution of a Bankrupt's es-

tate under section 64 of the Act). Obviously the parties intended that if the agreement was valid, that the liens were cancelled thereby. All of the remaining assets of Francine's were transferred to the defendant. It would be absurd to attribute to defendant the intention of preserving a lien on property that had thereby become his own.

or subordinated by the Act) to result in the depletion of the debtor's estate also removes the exchange from the meaning of "for or on account of an antecedent debt"—the third requirement of section 60(a) (1). A transfer in consideration for which a lien which is not invalidated or subordinated by the Act is considered to be an exchange for a present consideration, rather than for a past consideration, or antecedent debt.

A transfer for a present consideration cannot be preferential because the transferee is not being preferred over other creditors. In that situation there is no depletion or diminution of the estate. It follows that a substitution of property by property of equal value cannot be preferential because there is no diminution or depletion of the estate. A transfer made in satisfaction of an unassailable mortgage, pledge, trust receipt, mechanic's lien or other valid lien is supported by a present consideration where the property subject to lien is at least equal to the amount of the payment. Hence such a transfer cannot be preferential.

Seligson, Preferences Under the Bankruptcy Act, 15 Vand.L.Rev. 115, 120 (1961) (citations omitted) (emphasis added). See, *e.g.*, Collier, Bankruptcy Pars. 60.19, .20, .22 (14th ed. 1964) and the cases cited therein; Porter v. Searle, 228 F.2d 748, 750, 755–756 (10th Cir.1955); Ricotta v. Burns Coal & Build. Supply Co., 264 F.2d 749 (2d Cir. 1959).

To recapitulate, the exchange made the basis of this suit may fall within the above described exception to § 60, only if the following conditions are met: (1) assets of the bankrupt must have been encumbered and subject to a lien which, at least in part, had not been invalidated or subordinated by the Act; (2) the exchange made the basis of the suit must have been in consideration for the cancellation of such lien; (3) the value of the property subject to such lien must have at least equalled the value of the property transferred; and (4) the value of the property transferred for the cancellation of such lien must not have exceeded the value of that part of the lien that would have been enforceable against the Trustee in Bankruptcy.

1. *Whether defendant's assets were encumbered and subject to a lien of the defendant which was enforceable against the Trustee.*

◼ Amendments in July, 1966 to section 67 of the Act altered the status of the landlord's lien for rent. See, Pub.L. 89–495, 80 Stat. 268 (1966). In accord with the prevailing authority, the court has determined that these amendments should not be enforced retroactively so as to apply to the transfer here concerned which occurred prior to the effective date of these amendments. See, 4 Collier, Bankruptcy Par. 67.20 at pp. 242–245 (14th ed. 1967) and the cases cited therein. However, in the event the court is in error in this conclusion, the effects of the July, 1966 Amendments on the validity of these liens will also be considered.

◼ Before the 1966 Amendments, landlord liens were not invalidated by the Bankruptcy Act unless they were statutory and unless they were not accompanied by possession, levy, sequestration or distraint. § 67(c) (2), 11 U.S.C. § 107(c) (2). However, under § 67(c) (1), statutory liens on personal property not accompanied by possession and liens, whether statutory or not, of distress for rent were subordinated and postponed in payment to the debts specified in clauses (1) and (2) of section 64(a). Furthermore, such liens were restricted in amount to the rent allowed priority under section 64(a) (5) (the "rent which is legally due and owing for the actual use and occupancy of the premises affected, and which accrued within three months before the date of bankruptcy").

◼ The evidence in this case indicates that the taxes and wages accorded priority under clauses (1) and (2) of section 64(a) had been fully paid prior to the initiation of the bankruptcy proceedings. Thus, defendant's claim under §

64(a) (5) for rent due and owing within three months before bankruptcy would not be subordinated or postponed in payment by reason of the above summarized provisions of § 67(c) (1).

4 Collier, Bankruptcy Par. 67.23 at p. 282 (14th ed. 1967) states that the pre-1966 language of § 67(c) suggested "that a statutory lien of a landlord that was accompanied by possession was valid and enforceable in full under § 67(c) if it was not a lien of distress. If this is a correct statement of the effect of pre-1966 section 67(c) (2), then it would apply to the facts of the present case. Under Tex.Rev.Civ.Stat.Ann. Art. 5238 landlords are granted a statutory landlord's lien upon a tenant's property that is upon the leased premises to secure the payments of rents due and to become due for the remainder of the current year in which the breach of the lease agreement occurs. This statute exists independent of the common law lien of distress for rent. United States v. Menier Hardware No. 1, Inc., 219 F.Supp. 448 (W.D. Tex.1963). Defendant fully complied with the statutory requirements for perfecting this lien. Because defendant's statutory lien was accompanied by possession of the encumbered property, it may have been enforceable in full against the estate of the bankrupt.

■ Next to be considered is the status of defendant's express contractual landlord's lien which was granted by Francine's in the original lease agreement. This court believes that such a contractual landlord's lien, if properly perfected as a contractual lien under local law, would not have been invalidated or subordinated by section 67(c) (1) prior to the 1966 amendments.

■ Under Texas law a contractual lien for rent due, if properly perfected, has the status of a chattel mortgage. United States v. Menier Hardware No. 1, Inc., 219 F.Supp. 448 (W.D.Tex.1963); Shwiff v. Dallas, 327 S.W.2d 598, 602 (Tex.Civ.App.1959); United States v. Truss Tite, Inc., 285 F.Supp. 88 (S.D. Tex.1968). As such, it is unrelated to

and independent of either the common law lien for "distress for rent" [see, Ginsberg v. Lindel, 107 F.2d 721, 727 (8th Cir.1939); for definition of distress for rent see City Building Corp. v. Farish, 292 F.2d 620 (5th Cir.1961)] or the statutory landlord's lien created by Tex.Rev.Civ.Stat.Ann. Art. 5238 [cf., United States v. Truss Tite, Inc., 285 F. Supp. 88 (S.D.Tex.1968)].

The old section 67, in invalidating or subordinating certain landlord's liens, referred only to statutory landlord's lien and to liens of distress for rent, and nowhere referred to express contractual landlord's liens. Because these consensual landlord's liens are not equivalent to either the common law lien of distress for rent or the statutory landlord's lien, it seems clear that they were neither invalidated nor subordinated by the old section 67 and, accordingly, were enforceable against the Trustee in Bankruptcy. See, In re King Furniture City, Inc., 240 F.Supp. 453 (E.D.Ark.1965); Ginsberg v. Lindel, 107 F.2d 721 (8th Cir.1939); Marsh, Triumph or Tragedy? The Bankruptcy Act Amendments of 1966, 42 Wash.L.Rev. 681, 726 (1966); 84 Banking L.J. 684, 693 n. 31 (1967); comment, The Landlord's Lien in Colorado Practice and Under the Bankruptcy Act, 40 U.Colo.L.Rev. 402, 406–07 (1968).

One writer has made the following observation:

It is generally conceded that former 67(c) (1) did not encompass contractual landlord's liens. However, there is a limited dissent in Collier. Collier states that "whether statutory, common law, or contractual * * * a lien of distress for rent was subordinated under [former 67c(1)]." However, the cases cited as authority for this position all antedated the Chandler Act [the 1938 amendments to § 67] and were not, therefore, construing former 67c(1). The court in each case was construing a lease which, it appears, gave the landlord both a lien and a right of distress. To the extent that the right of distress is created by contract, the assumption in *Collier*

may be correct, but this is only because the contract itself gave the right in specific terms. The phrase itself is anomalous. The right of distress arises from the landlord-tenant relation without regard to agreement between the parties, while a contractual lien depends wholly on consent. Thus, the two interests are at opposite ends of the spectrum. The contractual landlord's lien, if not phrased in terms of distress, gives the landlord a right which is completely separate from the right of distress which common law or statute may give him.

Comment, The Landlord's Lien in Colorado Practice and Under the Bankruptcy Act, 40 U.Colo.L.Rev. 402, 406 (1968) (citations omitted).

The apparently infectious word "distress" is nowhere to be found in either the original lease agreement or the cancellation agreement. The common-law right of distraint does not appear to have been incorporated into the contractual lien created by the lease. Indeed, there would seem to be little reason to incorporate into contract a right which exists independent of contract.

Defendant properly perfected the contractual lien created by the original lease. Thus perfected, it was valid and enforceable for its full value against the Trustee—unaffected by § 67(c) (1) as that section read before the 1966 amendments.

In the event the court should be in error in holding that the 1966 Amendments to § 67(c) should not be enforced retroactively so as to apply to the instant case, the court now considers the effect the 1966 Amendments would have on the validity and priority status of defendant's statutory lien and contractual lien.

The position of the landlord as a claimant in bankruptcy has steadily worsened since the inception of the Bankruptcy Act in 1898. Landlords' liens, once treated as superpriorities, have steadily been emasculated. These liens suffered their most recent setback in 1966 when the language of § 67(c) was completely rewritten. Section 67(c) (1) (C) now invalidates as against the Trustee, "every statutory lien for rent and every lien of distress for rent, whether statutory or not". The second sentence of § 67(c) (1) (C) provides that "[a] right of distress for rent which creates a security interest in property shall be deemed a lien for the purposes of this subdivision." Subdivision (2) of section 67(c) states, in part, that "[c]laims for wages, taxes, and rent secured by liens hereby invalidated or preserved shall be respectively allowable with priority and restricted as are debts therefor entitled to priority under clauses (2), (4), and (5) of subdivision (a) of section 104 of this title [§ 64 of the Act], even though not otherwise granted priority."

The amendments to section 67(c) have been severely criticized as further complicating an already intolerable statute. See, Marsh, Triumph or Tragedy? The Bankruptcy Act Amendments of 1966, 42 Wash.L.Rev. 681 (1967). Although all the ramifications of the 1966 amendments to section 67 are by no means clear, several important changes have been made in the pre-1966 amendment law:

All liens for rent which were postponed in payment by the provisions of former 67(c) 1 are now totally invalid against the trustee. This includes statutory and common law liens of distress for rent, as well as all statutory liens for rent. The liens invalidated by the new section are now allowed as a fifth priority among the unsecured creditors of 64a. This is quite a comedown, since liens postponed by former 67c occupied a payment position behind the first and second priorities of 64a. Under former 67c(2) the landlord could save his statutory lien from invalidation by an action of levy, sequestration, or distraint. These remedies are of no aid under new 67c(1) (C). Any statutory lien for rent is invalidated, regardless of a landlord's actions. Finally, liens

postponed by former 67c were allowed as priorities among unsecured creditors of 64a only if state law accorded them priority. New 67c(2) abolishes this requirement. An invalid lien is now allowable as a priority under 64a(5) whether state law recognizes it or not.

Comment, The Landlord's Lien in Colorado Practice and Under the Bankruptcy Act, 40 U.Colo.L.Rev. 402, 405 (1968) (citations omitted).

Thus, if the new section 67(c) were applicable to the facts of this case, defendant's statutory lien for rent would be invalidated even though accompanied by possession, levy, sequestration or distraint, and any common law lien of distress for rent would also be invalidated, whether or not accompanied by possession rather than merely being subordinated to the first two priorities (taxes and wages) of section 64(a) and restricted in amount to the past three months rent due and owing.

 Although the treatment to be accorded statutory landlord's liens and common law liens of distress for rent under the post-1966 § 67(c) seems clear, the section, as before the 1966 amendments, is ambiguous as to the treatment to be accorded the contractual landlord's lien. This court has concluded that the contractual landlord's lien is no more invalidated now than it was prior to the 1966 amendments. The court's conclusion is based on the following observations:

(1) The first sentence of section 67(c) (1) refers only to statutory liens and liens of distress for rent. The contractual landlord's lien is not mentioned. This language is similar to the former language, except that liens postponed by the old section 67(c) (1) are now invalidated. Thus, if the contractual landlord's lien was not postponed by the old language, it would not be invalidated by this new language.

(2) Congressional history surrounding the 1966 amendments does not support a construction of the second sentence (defining a lien for the purpose of the subdivision as "[a] right of distress for rent which creates a security interest in property") that would include a contractual landlord's lien.

The wording of the second sentence is new. The only tangible guides to its meaning, at present, are the precise language used and the congressional history of that language. Since contractual landlord's liens are not specifically included, it must be determined whether the lien may be classified as "[a] right of distress for rent which creates a security interest."

An examination of its legislative history reveals that the second sentence is not accorded specific comment. In reporting out the bill, the drafters state broadly that "the new section 67c(1) (C) invalidates statutory liens for rent and liens of distress for rent, whether statutory or not. With the exception of statutory liens, this does not appear to go beyond the scope of prior law. It certainly does not express an intent to include contractual liens.

Earlier in the congressional report, the statement appears that:

The purpose of section (1) [of 67c] is to specifically embody the meaning which Congress originally intended in the act and thus assure that consensual securities are not subjected to any of the tests of validity prescribed by new section 67c.

Since this statement applies to the whole of 67c(1), and since a contractual landlord's lien is by definition a consensual security, the obvious conclusion is that contractual landlord's liens were not intended to be covered by the new section.

Comment, The Landlord's Lien in Colorado Practice and Under the Bankruptcy Act, 40 U.Colo.L.Rev. 402, 407–408 (1968) (citations omitted).

(3) The contractual landlord's lien, unlike either the statutory lien or common law lien of distress for rent, is wholly consensual—existing solely by

force of the intentions of the contracting parties. The court cannot believe that Congress intended to invalidate such a lien without specific comment.

By reason of the foregoing, defendant held a valid, non-preferentially existing contractual landlord's lien, enforceable against the Trustee, regardless of whether the old or new section 67(c) applies. Defendant, under the old section, also held a valid and enforceable statutory lien for past rent due and owing (up to three months).

2. *Whether the exchange was in consideration for the cancellation of such valid and enforceable lien.*

As stated previously, Francine's, Inc. consented in the lease cancellation agreement of March 14, 1966 to the foreclosure of defendant's statutory and contractual landlord's liens in consideration for the discharge of Francine's lease obligations. The liens, as part of the lease agreement, were also cancelled. So at least a part of the exchanged consideration was for the cancellation of these liens.

3. *Whether the value of the property subject to such lien or liens at least equalled the value of that transferred.*

This qualification obviously has been met. All of Francine's property upon the leased premises was subject to defendant's lien, and all of this property was transferred to defendant. The property encumbered and the property transferred were one and the same, so the value of that transferred equalled the value of that subject to the lien.

4. *Whether the value of the property transferred for the cancellation of such lien or liens exceeded the value of that part of the lien that would have been enforceable against the Trustee in Bankruptcy.*

a. The value of Francine's property transferred.

Having considered the trial testimony, exhibits and other evidence properly made part of the record, the court has concluded that the total fair value of the property, including the $1,000 in cash that was owned and transferred by Francine's to defendant amounted to $4,000.

The lease agreement provided that, upon the termination of the lease, Francine's would yield up to defendant all erections and additions made upon the leased premises. This property was to belong to defendant. The furniture, fixtures and equipment left on the leased premises were of very little value, and that left on the premises primarily consisted, value-wise, of permanent improvements affixed to the building and adapted especially for use in the particular building—*i. e.*, partition walls for dressing and storage rooms and office space, clothing racks which hang from and are affixed to the walls, wall-to-wall carpeting and especially designed drapes. These items, under the terms of the lease, became the property of the landlord, and thus are not to be considered in determining the value given defendant by Francine's.

If the inventory of women's ready-to-wear clothing had been preserved until a Trustee was appointed, the value of the merchandise would have depreciated substantially. The evidence shows that the inventory consisted of winter clothing, which was out-of-season by mid-January. The evidence also shows that the inventory consisted of odd and broken lots and incomplete lines, and that substantial restocking, advertising and management and sales personnel expenses would be required to sell the merchandise at normal price levels. The evidence is undisputed that Francine's had not reordered current merchandise for some time and that the regular stock had been depleted by Christmas and January clearance sales. Under these circumstances, Francine's original cost of merchandise figures would grossly overstate the fair value of this merchandise.

b. The value of defendant's enforceable liens.

At the time of the March 14, 1966 cancellation agreement, accurate valuation of the value of defendant's enforce-

able liens was impossible. Under the terms of the lease, defendant was entitled to recover the reasonable expenses, court costs and attorney's fees incurred in the collection of past and future rent and damages in the event of a breach of the contract by Francine's. The express contractual lien incorporated into the lease agreement encumbered all property upon the leased premises to secure the payment of all rents or other sums due under the terms of the lease. However, the lessee's obligation for future rental was, under the terms of the lease agreement, to be credited during the remainder of the contract period with any rents received by lessor from reletting the premises.

Although the defendant had been negotiating with a third-party for the reletting of the premises prior to the date of the transfer instrument of March 14, 1966, defendant and this third-party had not entered into a lease agreement, reletting the property, until March 15, 1966. On March 14, 1966 it does not appear that the defendant and the third-party had come to terms. There is also evidence that the defendant was experiencing considerable difficulty in leasing other building space in the area. By reason of the foregoing, the agreement reached between Francine's and defendant would not constitute an unreasonable settlement of the rights and obligations under the lease, as matters existed at the time of the agreement.

 If subsequent bankruptcy proceedings had not ensued, there would seemingly be no reason to question the fairness or adequacy of the consideration exchanged between the contracting parties. But bankruptcy did follow the transfer, and § 60 of the Bankruptcy legislation brought into operation because of the bankruptcy shifted concern to the "fairness" of the transfer to other creditors, third-parties not privy to the preferential transfer. The legislative purpose in declaring certain preferential transfers voidable under § 60 is certainly not to rectify unfairness that may have been caused by the transfer as

between the debtor-transferor and the creditor-transferee; rather the purpose is to invalidate certain transfers that have been declared, legislatively, unfair as between the creditor-transferee and other creditors. Thus the test as to the fairness or reasonableness as to the value of property preferentially transferred in consideration for the cancellation of an enforceable lien is whether the remaining creditors of the same class as the transferee-creditor have been adversely affected thereby. This occurs when the assets of the bankrupt that would have been available for distribution to other creditors of the same class in the event the preferential transfer had not occurred are reduced by reason of the transfer. Whether a preferential transfer made for the cancellation of a valid, enforceable lien has the undesired effect may not always be determinable at the time of the transfer. Consequently, events occurring subsequent to a preferential transfer should be considered in determining the true value of the lien preferentially satisfied. If events subsequent to the transfer grossly reduce the "true" value the lien would have had if not preferentially satisfied, and the consideration given for its cancellation was therefore excessive, the undesired effect under § 60 has resulted— the assets that otherwise would have been available for distribution in bankruptcy have been diminished.

 In the present case, the consideration given by Francine's clearly exceeded the "true value" of defendant's liens. The property was relet on March 15, 1966, the day after the cancellation agreement was executed. The new lease provided for the same monthly rental as did the cancelled lease. The court rejects defendant's argument that it was damaged in the amount of one year's rental because the new lessee let Francine's location rather than another location of defendant's that was also vacant. Nor does the court believe that defendant was damaged because the new lease ran only for renewable six-month terms, rather than for a period of years as did

Francine's lease. Defendant's witness Mr. Peterson testified that the new tenant paid a bonus in consideration for defendant's agreement to accept only a renewable six-months lease and to operate a discount store operation. The bonus given would seem to be adequate and off-set this element of damages. Thus, as matters turned out, there was no prospective loss of rent. The only rental loss that actually occurred was for rent due for the 27 days preceding March 14, 1966 (date of cancellation), which, based on a monthly rental of $342.50, amounted to $308.07. The only other possible element of damages would be attorney fees paid by defendant and recoverable under the lease. Defendant asserts such fees total $631.66. Assuming this assertion to be correct, defendant's provable damages still would have amounted to only $939.73.

The $4,000 value of property owned and transferred by Francine's greatly exceeded the true, fair value of defendant's enforceable contractual landlord's lien (whether valued at $308.07 or $631.66). Consequently, this transfer had the undesirable effect of depleting the bankrupt's estate. Accordingly, the judicially-created exception to the operation of § 60—where a pre-bankruptcy transfer is made for the cancellation of a valid, non-preferentially existing lien —would not be wholly applicable.

The question remains whether the whole transfer or only that part of it that exceeds the true value of the lien should fall outside the protection of this exception to the applicability of § 60. The latter alternative would seem to best achieve the purpose of § 60 in protecting third-party creditors, and at the same time fairly treat the creditor-transferee. The court does not feel it unjust to require creditors receiving a preferential satisfaction of an obligation, at least a part of which represents an antecedent debt within the contemplation of § 60, to accept such transfers at the risk of the transfer later being attacked (1) should bankruptcy proceedings follow and (2) should the consider-

ation given exceed the "true" value of the lien being cancelled. However, owners of valid enforceable liens should not be penalized unduly for their inability to accurately foresee the turn of future events. What such a creditor had a right to receive preferentially should not be taken from him simply because the creditor, as a preferential transferee, received more than he had a right to receive. The alternative would be an idle gesture, at any rate, for, as a holder of a valid lien enforceable against the Trustee in Bankruptcy, the creditor would be entitled to receive the "true" or "fair" value of the lien out of the estate before any other distributions could be made. Thus, to the extent of the lien's "true" or "fair" value, the consideration given should not be treated as given "for or on account of an antecedent debt" within the meaning of § 60. *Cf.*, Aulick v. Largent, 295 F.2d 41 (4th Cir. 1961).

The consideration given in the present case that exceeded the "true" value of defendant's valid liens (and therefore not protected by the exception from § 60 created for the pre-bankruptcy satisfaction of valid and enforceable liens), would be subject to the tests of § 60 just like any other preferential transfer. Thus, the question must be answered whether any part of this amount constituted consideration transferred for or on account of an antecedent debt. The court thinks not.

 The only antecedent debt was past rent due in the amount of $308.07. Francine's was also obligated to pay rent in the future; however, such a covenant cannot be considered to be an antecedent debt. *Cf.*, Standard Oil of New Jersey v. Elliott, 80 F.2d 158, 159 (4th Cir. 1935); In re Roth & Appel, 181 F. 667, 669 (2d Cir. 1910).

 By reason of the judicially-created exception from § 60 for the pre-bankruptcy cancellation of liens enforceable in bankruptcy, the transfer involved herein was removed from § 60 insofar as it was for obligations secured by such liens and provable thereunder in a bank-

**770**

ruptcy proceeding. The past rent due, as part of such sum that would have been so provable, was therefore removed from the operation of § 60. Because this debt for past rent due represented the sole antecedent debt owed defendant, the consideration in excess of the value of this past rent due, given for the cancellation of the remaining obligations under the lease, could not have been "for or on account of an antecedent debt." Of course the result would be otherwise if the payment of past rent due (an antecedent debt) had been the sole reason for the entire transfer. In that case all sums in excess of the "true" value of the lien would still have been transferred for or on account of that antecedent debt. There would have been no present consideration. Nor is the court faced with a situation where the value of the antecedent debt cannot be precisely measured.

By reason of the foregoing, it appears to the court that the entire transfer made the basis of this suit is saved from the operation of § 60 because of the requirement in § 60(a) that the transfer be "for or on account of an antecedent debt." As stated at the outset, it is only those preferential transfers that have all the requisite elements set forth in § 60 that may be avoided under that section. The section does not provide for flexibility. Shackled with the requirement that the § 60 transfer must be "for or on account of an antecedent debt" and guided by the judicial construction accorded that phrase, the court is constrained to hold that the transfer here involved is not an avoidable preference under § 60 of the Bankruptcy Act.

The evidence does not indicate that the transfer in question was in any way fraudulent within the meaning of section 67(d).

By reason of the foregoing, defendant is entitled to judgment. Defendant's cross-action is therefore moot.

Accordingly, it is hereby ordered, adjudged and decreed that judgment be entered for defendant with costs.